(153 App. Div. 456.)

SYRACUSE ICE CREAM CO. v. CITY OF CORTLAND et al.

(Supreme Court, Appellate Division, Third Department. November 13, 1912.)

1. FOOD (§ 3*)—MUNICIPAL REGULATIONS—CONSTRUCTION—"MILK OR CREAM" —"ICE CREAM."

A provision of a sanitary code adopted by a city board of health that no owner, lessee, or occupant of any restaurant, etc., which shall purchase milk or cream from any person or corporation not having obtained a license as therein provided, shall use, sell, or dispose of any milk, cream, or ice cream without obtaining a license, only requires a person selling ice cream to obtain a license where it is made from milk or cream purchased from an unlicensed person or corporation, and not where the ice cream itself is so purchased, since, while "ice cream" is mostly cream or milk, it is a manufactured article with other ingredients, and is not covered by the term "milk or cream."

[Ed. Note.—For other cases, see Food, Cent. Dig. §§ 3, 4; Dec. Dig. § 3.*]

2. HEALTH (§ 8*)—BOARDS OF HEALTH—ORDINANCES AND RESOLUTIONS—CONSTRUCTION.

An ordinance of a board of health assuming to create an offense punishable by the criminal law should be strictly construed, especially against the city whose board has the right to make clear the prohibition intended.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 7; Dec. Dig. § 8.*]

Kellogg and Betts, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Cortland County.

Action by the Syracuse Ice Cream Company against the City of Cortland and another. From an order denying a motion to continue a temporary injunction, plaintiff appeals. Reversed, and motion granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Barnum, Wells & Barlow, of Syracuse (Walter Jeffreys Carlin, of New York City, of counsel), for appellant.

Fred Hatch, of Cortland, for respondent City of Cortland.

Davis & Lusk, of Cortland, for respondent Ball.

SMITH, P. J. [1] This action is brought to enjoin the defendants from interfering with the sale of the plaintiff's product in the city of Cortland by threats of prosecution under the Sanitary Code adopted by the board of health of said city, pursuant to chapter 400, § 175, of the Laws of 1904. That such threats were made is unquestioned upon the papers here presented. Nor is any question made that the sale of plaintiff's product in the city of Cortland has been materially interfered with thereby. Plaintiff has procured one dealer, however, to continue the sale of its product, and requested his arrest by the city authorities, in order that the right to sell plaintiff's product in said city might be determined. The city authorities, however, have neglected to make the arrest, and plaintiff has no other remedy than to bring this action, as his damages are uncertain and incapable of proof. The sole question, therefore, as I view the case, is as to the construction of the provision of the Sanitary Code under which the health authorities of the city of Cortland have assumed to act.

Section 33 of said Code provides as follows:

"No person who is the owner, lessee, or occupant of any restaurant, saloon, hotel, boarding house, café, ice cream rooms, or of any store or place whatsoever which shall purchase milk or cream from any person or corporation that has not obtained a license as hereinafter provided, shall use, sell, or dispose of any milk, cream, or ice cream, unless and until such owner, lessee, or occupant shall first have obtained a license or permission so to do from this board, as hereinafter provided."

The plaintiff manufactures ice cream at Syracuse, and seeks to sell the same in Cortland without a license from the board of health of the city of Cortland. It is the contention of the city authorities that, under the provision of the Sanitary Code cited, this cannot be done by a local dealer in the city of Cortland without himself obtaining a license therefor, inasmuch as plaintiff is without a license. As I read the provision of the Code cited, the case in question is not intended to be included therein. While ice cream is mostly milk or cream, nevertheless it is in fact a manufactured article, with other ingredients, as sugar and flavoring. Section 33 of the Sanitary Code, above quoted, requires the local dealer to have a license to sell "milk, cream or ice cream" only in case he buys "milk or cream" from some unlicensed dealer. Within the section itself, therefore, would seem to be an indication that the board of health did not consider ice cream as

included within the terms "milk or cream." From the milk or cream that they should buy they could not make ice cream and sell it unless the persons from whom the milk or cream was furnished were duly licensed to sell. No provision seems to have been made for a license to sell ice cream, except where such ice cream be made from milk or cream purchased by the local dealer.

That this was so understood by the board of health itself would seem to be indicated by the fact that of the blanks furnished for obtaining licenses no blank was furnished appropriate for obtaining a license by an ice cream manufacturer. By section 34 of the Sanitary Code an application for a license is required to be made upon a blank furnished by the city clerk. It is significant that upon an application to the city clerk the only blank that he had was a blank appropriate to one selling milk and cream only from his own dairy, or purchased from other dairies. If section 33 of the Sanitary Code were originally intended to require a license from one selling ice cream, appropriate blanks would undoubtedly have been supplied to the city clerk, upon which the application for such license could be made.

[2] It may be argued that this provision is one to protect the public health, and that there can be no distinction between the mischief to be averted in the sale of ice cream purchased as such and ice cream made from milk or cream, and that the section should be liberally construed. Recognizing the force of this position, it is, I think, fully answered that this provision restricts the common-law right of the plaintiff to sell his products, and it assumes to create an offense punishable by the Criminal Law, and should be strictly construed. Moreover, the construction should be held more strictly against the city of Cortland, whose board of health has the right to make clear any prohibition in fact intended, and the court should not strain the language of the Code to supplement an oversight, possibly, of the board of health, creating thereby a new offense subjecting the offender to fine and imprisonment under the criminal law. Until the board of health then shall specifically and plainly require a license from local dealers to sell ice cream purchased from manufacturers not themselves licensed, a local dealer may lawfully sell ice cream so purchased without a license, and plaintiff is entitled to an injunction against interfering with the sale of its product by the threats of the local officers of the city.

The order should, therefore, be reversed, with $10 costs, and disbursements against the city of Cortland, and motion granted, with $10 costs.

Order reversed, with $10 costs and disbursements against the city of Cortland, and motion granted, with $10 costs. All concur, except KELLOGG, J., dissenting in opinion in which BETTS, J., concurs.

JOHN M. KELLOGG, J. (dissenting). The prevailing opinion, as I understand it, construes the Sanitary Code of the city of Cortland as requiring a license to sell ice cream only in cases where it is made from milk or cream purchased of a local dealer who has no license.

In other words, an unlicensed dairyman may sell his milk and cream outside the city limits. It may be made into ice cream there and sold in the city without license, while, if the cream was sold in the city and manufactured there, a license would be required. To me this is too technical a construction to put upon a health law. I think the ordinance was intended to protect the people from impure milk and cream and impure ice cream, and it should fairly be given that effect. It cannot give to ice cream made outside of the city with boughten milk any advantage over ice cream made within the city. The object of the ordinance is not to discriminate against local manufacturers or dealers but to prevent the sale of unwholesome ice cream. The place of its manufacture is immaterial. The material from which it is manufactured is most material.