Hillsborough,  } No. 3109.
June 22, 1939. }

GEORGE P. KIMBALL

*v.*

EGLANTINE E. BLANCHARD *& a.*

*Raymond C. Leahy* and *Robert B. Hamblett* (*Mr. Hamblett* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for Eglantine E. Blanchard.

*Edward J. Lampron,* City Solicitor (by brief and orally), for the other defendants.

MARBLE, J.   The ordinance under review purports to establish a comprehensive scheme of zoning, covering all land within the territorial limits of Nashua.   No fault with the zoning of the land bordering the Daniel Webster Highway could be found if the ordinance merely extended the urban type of zoning to a suburban area and placed reasonable restrictions on the use of roadside stands, gasoline filling stations, and similar enterprises.   Wertheimer, "Constitutionality of Rural Zoning," 26 Cal. Law Rev. 175, 183, 184.

No such system has been inaugurated, however.   Five separate parcels of land on highways leading to Massachusetts (one parcel adjacent to the plaintiff's farm), because of uses antedating the ordinance, have been converted into five separate business "districts" despite the fact that "zoning is regulation by districts" in the real sense of the term "and not by individual pieces of property" (37 Harv. Law Rev. 834, 851), and all the remaining land surrounding the thickly settled portion of the city has been placed in the class A, "one-family dwelling" residence district.

This suburban area extends to the town of Merrimack on the north, to the Merrimack River on the east, to the town of Hollis on the west, and to the Massachusetts state line on the south.   It comprises wasteland, woodland, and very sparsely settled regions, and the only reason suggested by defendants' counsel for its specific

classification is that the zoning authorities have deemed it expedient to place all such territory in the most restricted division until future conditions shall determine the appropriate districting of the tract.

It is true of course that accepted methods of zoning are adapted not only to present conditions but to the requirements of probable and desirable growth. In the case of *Stone* v. *Cray*, 89 N. H. 483, 485, it is said: "The general welfare may be tested by considerations of stabilization, orderliness and development in the forms, branches and grouping of the elements of residence, business and industry in community life." In the present instance, however, no attempt has been made to establish, so far as rural land-use regulation is concerned, even "a reasonably fair, rough-and-ready equalization" of these elements (37 Harv. Law Rev. 834, 853). Plaintiff's counsel aptly describes the mode by which this property has been zoned as "purely a wastebasket process, absolutely arbitrary and unreasonable," and having no substantial tendency to promote any of the purposes which proper zoning regulations are designed to secure.

This contention is sustained. See *Sundeen* v. *Rogers*, 83 N. H. 253, 258; *Sullivan* v. *Company*, 89 N. H. 112, 114; *Brady* v. *Keene*, ante, 99; P. L., c. 42, s. 48. See, also, *Dowsey* v. *Kensington*, 257 N. Y. 221.

But even if the restrictions on the use of the plaintiff's land had been validly imposed, we believe that the plaintiff would be entitled to exercise the right which he claims. The owners of farms are permitted, as an accessory use, to sell "farm produce on the premises." This is the only provision in the ordinance relating to the sale of farm products. The fact that ice cream is a "manufactured article" (*Syracuse &c. Co.* v. *Cortland*, 138 N. Y. Supp. 338, 339) is not decisive of the controversy. Cheese and butter, though produced at factories and creameries, have been held to be "dairy farm products" within the meaning of a motor-vehicle tax statute containing a provision exempting from its operation motor vehicles used exclusively in transporting dairy or other farm products between the point of production and the primary market. *State* v. *Commission*, 207 Wis. 664.

The noun "produce" has "no definite, exact and technical meaning. It may be used in a larger or more restricted sense." *District* v. *Oyster* (D. C.), 4 Mackey, 285, 286. "Agricultural product or products" is one of its definitions, and "agriculture" in its broad use includes dairying. Webster's New International Dictionary, 2d *ed.* In construing the phrase "sale of farm produce on the premises"

attention should be paid to the comprehensiveness of its terms and to the extent of its application.

With these considerations in mind, we conclude that it could not have been the purpose of the provision in question to prohibit a farmer, wherever his farm might be located, from selling on his own land a commodity composed primarily of agricultural raw material there produced. The interpretation for which the defendants contend would place under the ban such common farm-"manufactured" products as cider, maple syrup, butter, and cheese. If there had been any intention to restrict the farmer's sales to farm produce in its natural state, the qualifying phrase could easily have been employed.

The order of the board of adjustment is set aside.

*Decree for plaintiff.*

All concurred.