CORRIE M. DOWSEY, Respondent, v. VILLAGE OF KENSINGTON et al., Appellants.

222

(Argued June 8, 1931; decided July 15, 1931.)

*Edward M. Bassett* and *August C. Flamman* for appellants. Plaintiff prior to the commencement of the action, should have filed her plans with the village and requested permission to build and, if permission was denied, exhaust her remedies before the Board of Appeals. (*Lang's Creamery, Inc.*, v. *City of Niagara Falls*, 251 N. Y. 343; *Central R. R. & Banking Co.* v. *Pettus*, 113 U. S. 127; *West* v. *City of Wichita*, 234 Pac. Rep. 978; *Dynzer* v. *City of Evanston*, 319 Ill. 226; *Eaton* v. *City of Newark*, 128 Atl. Rep. 377; *Cliffside Park* v. *Borough of Cliffside*, 96 N. J. L. 278; *People ex rel. St. Basil's Church* v. *Kerner*, 125 Misc. Rep. 526; *People ex rel. Benedict* v. *Milleman*, 128 Misc. Rep. 367; *Mathewson* v. *Brockett*, 127 Misc. Rep. 895; *Horwitz* v. *Schwab*, 130 Misc. Rep. 158; *People ex rel. Smith* v. *Walsh*, 211 App. Div. 205; 240 N. Y. 606; *People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *People ex rel. Broadway & 96th Street Realty Co.* v. *Walsh*, 203 App. Div. 468; *Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100; *People ex rel. Sondern* v. *Walsh*, 108 Misc. Rep. 193; *People ex rel. Werner* v. *Walsh*, 212 App. Div. 635; *Goldenberg* v. *Walsh*, 215 App. Div. 396; *Fordham Manor Reformed Church* v.

*Walsh,* 217 App. Div. 177; 244 N. Y. 280; *People ex rel. Walsh* v. *Kleinert,* 191 N. Y. Supp. 947; *Palmer* v. *Mann,* 237 N. Y. 616; *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Reed* v. *Board of Standards & Appeals,* 230 App. Div. 21; *People ex rel. Helvetia* v. *Leo,* 231 N. Y. 619; *People ex rel. Facey* v. *Leo,* 230 N. Y. 602.) The zoning ordinance was a proper exercise of the power delegated to the village under article 6-A of the Village Law and was substantially related to the public health, safety and welfare of the village. (*Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Wulfsohn* v. *Burden,* 241 N. Y. 288; *Isenbarth* v. *Bartnett,* 206 App. Div. 546; 237 N. Y. 617; *Matter of Hecht-Dann Construction Co.* v. *Burden,* 124 Misc. Rep. 632; *Nectow* v. *City of Cambridge,* 277 U. S. 183.)

*G. Burchard Smith, Lawrence R. Condon* and *James L. Dowsey* for respondent. The zoning ordinance of the village of Kensington, in so far as it affects the plaintiff's premises, was not substantially related to the public health, safety and general welfare and is unreasonable, unconstitutional and beyond the exercise of the police power. (*Matter of Wulfsohn* v. *Burden,* 244 N. Y. 288; *Nectow* v. *City of Cambridge,* 277 U. S. 183; *Fox Meadow Estates, Inc.,* v. *Livingston,* 137 Misc. Rep. 22.) The plaintiff was not required prior to the commencement of the action to file plans with the village and request permission to build and, if permission were denied, exhaust her remedies before the Board of Appeals. (*Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365; *Nectow* v. *City of Cambridge,* 277 U. S. 183; *Lathrop* v. *Town of Norwich,* 111 Conn. 616; *Ross* v. *Gonzales,* 29 S. W. Rep. [2d] 437; *Eaton* v. *City of Newark,* 128 Atl. Rep. 377; *West* v. *City of Wichita,* 234 Pac. Rep. 978; *People ex rel. Sheldon* v. *Board of Appeals,* 234 N. Y. 494; *People ex rel. Bienert* v. *Miller,* 188 App. Div. 113; *Matter of Stevens* v. *Clark,* 216 App. Div. 351; *Jewish Consumptives Relief*

*Soc.* v. *Town of Woodbury,* 230 App. Div. 228; *Prescott* v. *Pierce,* 130 Misc. Rep. 63; *People ex rel. Fordham M. R. Church* v.· *Walsh,* 244 N. Y. 280; *Matter of Pounds* v. *Walsh,* 129 Misc. Rep. 676; 223 App. Div. 861; 248 N. Y. 591; *Matter of Municipal Gas Co.* v. *Nolan,* 121 Misc. Rep. 606; 208 App. Div. 753.)

LEHMAN, J. The village of Kensington is situated in a territory known as the Great Neck section of Long Island. In that section, contiguous to the city of New York, homes have been built by many who sought there a grace and dignity of life difficult to attain in or near great urban industrial centers. The village communities scattered through that section are almost completely residential. Mercantile, industrial and social activities there serve, almost exclusively, the wants of the residents of the section. The village of Kensington is coterminous with a plot of land which was originally developed as a single residential unit. On the original plan, the streets were laid out in a manner calculated to secure an atmosphere of dignified, quiet retirement, and the lots fronting on those streets were sold subject to drastic restrictions. The village has a frontage of about one-fifth of a mile on one side of Middle Neck road, the most active thoroughfare of that district, and extends from that road nearly a mile to Manhasset bay. Four streets running from east to west converge, or end, at a village street called Park lane, near Middle Neck road, and there is only one entrance to the village from that public thoroughfare. Near the opposite end of the village the streets again converge to form a single entrance from Shore road. On the opposite side of Shore road there is a small plot of land running to the water, which in large part is used for a private park and.swimming pool by some of the village residents. The plaintiff's land includes the whole Middle Neck frontage of the village south of the entrance to the village and runs back to Park lane, one of the village streets. Its area is about 76,000 square feet.

The village of Kensington in 1926 passed a zoning ordinance. With the exception of the small plot of land at the opposite end of the village, extending from the Shore road to Manhasset bay, the entire village, including the plaintiff's land, has been placed in one " use " district, and in that district, the ordinance provides, that " no buildings shall be erected other than a building with its usual accessories, arranged, intended or designed exclusively for one or more of the following uses: 1. A dwelling for not over one family or for one housekeeping unit only. * * * 2. Churches. 3. Schools, libraries or public museums. 4. Buildings for the Village Fire and Police Departments and such other buildings as may be necessary for Village purposes." The plaintiff, claiming that the attempted restriction of the use of her land is unreasonable and beyond the power of the village authorities, has brought this action to obtain a declaratory judgment that the zoning ordinance is to that extent ineffective and void. Judgment in favor of the defendant was reversed by the Appellate Division, which adjudged that the zoning ordinance " in so far as it restricts the use of the premises in the village of Kensington on the easterly side of Middle Neck road to residential purposes only is legally unreasonable and therefore invalid."

The evidence presented upon the trial leaves no doubt that the market value of the land owned by the plaintiff is greatly diminished by the restrictions upon its use. There are one hundred and seventy-eight one-family detached residences in the village, and very little undeveloped land. The zoning ordinance is intended to prevent the intrusion of business or apartment buildings and to preserve the rural quiet of the village. The plaintiff's land is at the edge of the village fronting on a frequented highway. The village has no power to restrict the land on the opposite side of that highway, nor the

land to the north or south of the narrow strip of land embraced in the village. The township in which the village is situated has adopted zoning regulations for lands not within any incorporated villages. Other villages have also adopted zoning regulations. All these regulations permit the erection of business or apartment buildings, or both, along Middle Neck road. For several years no one-family dwelling has been erected upon that highway. While less frequented roads are suitable for the erection of homes for those who seek seclusion and quiet, the main highway of the section is better suited for the erection of business or apartment buildings. Concededly it is more valuable for that use and less valuable for use for one-family detached dwellings.

Residence districts into which business may not intrude must have definite boundaries, and the Legislature has left to the local authorities the decision where those boundaries should be placed " for the purpose of promoting the health, safety, morals, or the general welfare of the community." (Village Law; Cons. Laws, ch. 64, § 175.) Business buildings just beyond the residence district may render the land just within the residence district less desirable for residential use. Special hardship to an individual owner must at times be suffered for the general welfare, but neither the Legislature nor the local authorities acting under power delegated by the Legislature, may impose such special hardship unnecessarily and unreasonably. Such special hardship may at times be avoided or mitigated by a special variation of a general zoning regulation. The zoning ordinance which the plaintiff attacks has made provision for such variation in particular cases by the Board of Appeals. The plaintiff has not seen fit to apply for such a variation. The defendant urges that until such an application has been made and refused, the plaintiff has not exhausted the remedies afforded by the ordinance and an action in equity to declare the zoning ordinance unreasonable

and void as to her is premature. Until then, it is said, there is no controversy between the parties.

Doubtless it is difficult, perhaps impossible, for a legislative body enacting a zoning regulation to envisage the result of its regulation upon each piece of property which may be affected, or to weigh and adjust each private and public interest that may be involved. The exclusion of business from a particular district may promote the general welfare of the district, yet may destroy the value of a particular plot therein which cannot reasonably be used for residence purposes. In the same statute in which the Legislature conferred upon the Board of Trustees of a village the power to enact a zoning ordinance, it has provided that: " Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of such ordinance, the board of appeals shall have the power in passing upon appeals, to vary or modify the application of any of the regulations or provisions of such ordinance relating to the use, construction or alteration of buildings or structures, or the use of land, so that the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done." (Village Law, § 179-b.) The village ordinance now under consideration has expressly conferred the same power upon the Board of Appeals created by the ordinance.

No power has been conferred upon the Board of Appeals to review the discretion of the Board of Trustees in creating a general rule regulating the use, construction or alteration of buildings or structures or the use of land. Its function is to provide a measure of flexibility in the application of a general rule imposed for the general welfare. It cannot act until the owner has applied for permission to erect a building which does not comply with the " strict letter " of the zoning ordinance. Then " upon a showing of unnecessary hardship, general rules are suspended for the benefit of individual owners, and special privileges

established." (*People ex rel. Fordham M. R. Church* v. *Walsh*, 244 N. Y. 280, 290.) The plaintiff contends that the rule itself is invalid and that its existence seriously affects the value of her property. She may desire to sell her property rather than to erect a business building on it and the existence of a rule which would require a purchaser to take subject to the risk that a " special privilege " may not be granted, or if granted may be burdened by onerous conditions, must seriously affect the present market value of her property. " Assuming the premises, the existence and maintenance of the ordinance, in effect, constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances, the equitable jurisdiction is clear." (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 386.)

" The ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. * * * A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities." (*Village of Euclid* v. *Ambler Realty Co.*, *supra*, at p. 387.) In that case, as in several cases decided by this court, the considerations which may justify a zoning ordinance as a valid exercise of the police power have been carefully stated and weighed. (*People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429; *People ex rel. Sheldon* v. *Board of Appeals*, 234 N. Y. 484; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288.) There is no need of restating them here. The plaintiff does not maintain that the village might not exclude apartment houses or business buildings from a district devoted to one-family residences. She maintains only that the inclusion of her property in such a district is so unreason-

able that it cannot be supported under even the widest extension of the police power.

In large cities, zoning ordinances provide for the segregation of buildings intended for particular uses in appropriate districts. They make provision for every use except perhaps such use as might reasonably be considered noxious in every district of the city. Delicate problems are often presented in the division of districts that cannot be solved with justice to all by a general inflexible rule. That difficulty is inherent in any general zoning regulation. Where a restriction imposed by a general rule upon the use of property tends to promote the general welfare, the general rule may be reasonable even though its strict enforcement might cause unnecessary hardship or damage to the owner of particular property, provided the rule is made subject to variation in its application in case of such hardship. Then the courts will not refuse enforcement of the general rule, at least until the variation has been refused. In the first instance, the official body intrusted with that function must determine in such case the propriety and the extent of the variation.

Here the situation is different. The village of Kensington is small in area, and the Board of Trustees have not attempted in the zoning ordinance to segregate in appropriate places within the village all the activities of communal life. They have relegated business and industry to a very small section which the evidence shows is not adapted to business, and have excluded from the main portion of the village even residences excepting one-family detached houses. We are told that apartment buildings or stores on the Middle Neck road frontage, or, indeed, in any other part of the village, might cause traffic congestion, fire hazards and other dangers to the health and safety of the community. In truth, the inference from the evidence is clear that these claims are without substance and that the zoning ordinance has been framed for

the purpose of excluding such buildings from the village in order to preserve it as a secluded quiet community of one-family detached homes.

From the point of view of the residents of the village who bought property, restricted by deed to such use and laid out in a manner calculated to promote that end, the purpose of the ordinance may be desirable. Upon this appeal we may even assume that it promotes the public welfare. Even then, the ordinance transcends the limits of the power of the Board of Trustees, in so far as it seeks to impose restrictions which are patently unreasonable.

Property fronting on Middle Neck road is peculiarly adapted for apartments or business. Except on the frontage of the village of Kensington, extending on one side of the road for one-fifth of a mile, all property on that road may be used for such purposes. The plaintiff's land is adapted to use for one-family detached dwellings only if the front of such dwellings were placed towards Park lane, which lies wholly within the village, and then its value would be only one-quarter of its value if devoted to other uses. Moreover, testimony given by a witness produced by the defendant shows that the property within the village fronting on Middle Neck road may be used for apartments or stores without substantial detriment to the use of the property in the rear fronting on Park lane. The inference is reasonable that the property fronting on Middle Neck road has been included in the residence district primarily for the purpose of providing a beautiful and dignified village frontage on the public thoroughfare.

Æsthetic considerations are, fortunately, not wholly without weight in a practical world. Perhaps such considerations need not be disregarded in the formulation of regulations to promote the public welfare. (*Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330.) " Public welfare " is a concept which in recent years, has been widened to include many matters which in other times were regarded as outside the limits of governmental concern. As yet,

at least, no judicial definition has been formulated which is wide enough to include purely æsthetic considerations. Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.