MORRIS KAUFMAN et al., Plaintiffs, *v.* CITY OF GLEN COVE, Defendant, and MORRIS L. IDELEVITZ, Intervener.[*]

Supreme Court, Nassau County, January 13, 1943.

[*] Affd. with memorandum 266 App. Div. 870.

*Harry Roter* for plaintiffs.

*Jacob J. Pincus* for defendant.

*Nathan Zausmer* for intervener.

NOVA, J. This is an action for a declaratory judgment. The material facts, as they appear in the complaint, are as follows: For some thirty-eight years prior to May 1, 1940, plaintiff Morris Kaufman had been operating a junk-yard business on the premises No. 165 Glen Cove Avenue, in the city of Glen Cove, county of Nassau. On the date mentioned he acquired, in the name of his wife, plaintiff Anna Kaufman, the adjoining premises, No. 163 Glen Cove Avenue, and moved his junk business there, where he has been conducting it ever since. He keeps the junk in piles not over three feet high; and by written agreement of all the parties, dated December 2, 1942, and duly filed, they have stipulated to this fact.

Under the local Building Zone Ordinance, both the premises, Nos. 163 and 165 Glen Cove Avenue, are in a Business A District. Plaintiffs contend that in such a district the Zone Ordinance permits the maintenance of a junk yard in the manner in which it is being maintained, that is, by keeping the junk in piles not over three feet high. The local authorities, on the other hand, have taken the position that the Ordinance prohibits all junk yards, regardless of the height of the junk piles, and they have directed plaintiff Morris Kaufman, under penalty of prosecution, to cease conducting his junk yard.

Accordingly, to settle this difference of opinion as to the proper interpretation of the local Building Zone Ordinance, the

plaintiffs have instituted this action against the City of Glen Cove. Plaintiffs seek a judgment declaring, in effect, that under such Ordinance, in a Business A District, a junk-yard business may be maintained, provided the junk is kept in piles not over three feet high. Plaintiffs also ask for an injunction against the local authorities to restrain them from interfering with the conduct of the junk business on their premises.

The City in its answer, paragraphs 32 to 43, interposes a counterclaim (which is also designated as a sixth separate and complete defense) in which it sets forth substantially the same material facts as are alleged in the complaint. The City asks for an affirmative judgment declaring that the local Zone Ordinance prohibits all junk-yard use on premises in a Business A District and for an injunction restraining plaintiffs from using their premises as a junk yard in violation of the Zone Ordinance.

The City in its answer has also set forth five other separate and complete defenses. These defenses and their legal effect will be discussed below.

One Morris Idelevitz, an adjoining property owner, has intervened in this action as a party defendant.

Plaintiffs now move for an injunction *pendente lite* restraining any interference with the conduct of the junk business on their premises. At the same time plaintiffs and the City have each made a cross motion for judgment on the pleadings pursuant to rule 112 of the Rules of Civil Practice. By making such cross motions apparently each side concedes that only questions of law are involved. Therefore either one or the other is entitled to judgment as matter of law, and it will be unnecessary to consider plaintiffs' motion for a stay or temporary injunction.

In view of the written stipulation, the complaint and the counterclaim present only a simple question of statutory construction: Does the local Zone Ordinance permit the maintenance of a junk yard on premises in a Business A District when the junk is admittedly kept in piles not over three feet high?

The relevant provisions of the Zone Ordinance are sections 6 and 7 thereof. So far as applicable, they read as follows: " Section 6. *Business Districts—Uses.* In any Business A District, no building, structure or premises shall be used or arranged or designed to be used in any part for any of the following purposes: (1) Any use specified below in Section 7, ' Uses ' as prohibited in Industrial Districts. * * * Section 7. *Industrial Districts—Uses.* Within any Industrial Dis-

trict no building, structure or premises shall be used or arranged or designed to be used in any part for any of the following purposes * * *; Junk yard except in piles not over three feet high or within a solid enclosure not less than five feet high. * * * "

If we accord to this language its plain, common-sense meaning, it is clear that section 6 provides that in any business district no premises shall be put to any use which is prohibited in industrial, districts under section 7; and that the latter section provides that within any industrial district no premises shall be used for a junk yard " except in piles not over three feet high or within a solid enclosure not less than five feet high."

It follows, therefore, that while the Ordinance prohibits junk yards generally in both business and industrial districts, it expressly sanctions and authorizes them in both districts when the junk is kept " in piles not over three feet high " or within the solid enclosure. The reason for this exception is obvious: Any junk yard so maintained is in a class by itself; it does not present the same problems as do other junk yards. And there is, of course, as much reason for making this exception in business districts as there is for making it in industrial districts. But regardless of the reason for the exception, under the plain language of the Ordinance such exception constitutes a permitted and not a prohibited use in a business district. When the meaning of a statute is plain and unambiguous, as it is here, the court will not allow such meaning to be thwarted or perverted by inquiry into latent motives or other possible meanings of the legislative body.

It is of interest to note that on May 8, 1940, while plaintiff Morris Kaufman was still in the process of moving his junk business to the present premises, the former City Attorney of Glen Cove, Roland A. Crowe, rendered to the City Board of Appeals a formal opinion in which he reached the same conclusion as to the meaning of the Zone Ordinance. Predicating his opinion on the provisions of sections 6 and 7, quoted above, he said that " unless the proposed junk yard (referring to plaintiffs' junk yard) violates the provisions pertaining to the height or pertaining to the enclosure, there is no violation " of the Ordinance. While not binding, this opinion indicates the local authorities' original understanding of the Ordinance.

Plaintiffs, therefore, are entitled to the judgment which they seek and the City's counterclaim should be dismissed, unless there is merit to any of the City's five other separate defenses. These defenses will now be considered in logical rather than in numerical sequence.

The first and fifth defenses: The City alleges (answer, paragraphs 6 to 9, 27 to 31) that on June 10, 1940, plaintiff Morris Kaufman and the intervener " appeared before " the local Board of Appeals " and submitted " to it for its interpretation and decision the question whether or not junk yards are permitted in a Business A District; that on the date mentioned the Board determined " that junk yards are prohibited " in such district; that this plaintiff thereafter instituted a certiorari proceeding in this court to review this determination of the Board; that the same question was presented before the Board and the court as is sought to be presented by this action, that is, " whether or not a junk yard was a prohibited use " in a business district, and that the decisions of the Board and of Mr. Justice STODDART have determined that question in favor of the City.

The second, third and fourth defenses: In the second defense the City alleges that on June 24, 1940, plaintiff Morris Kaufman presented to the local Board of Appeals his petition requesting its permission to conduct a junk yard on his premises; that this petition contained the same facts as the complaint in this action and was, in effect, an application for a variance from the provisions of the local Zone Ordinance; that on July 15, 1940, the Board reaffirmed its " finding that a junk yard was prohibited in a Business A District " by the Zone Ordinance and granted to this plaintiff a variance on the ground of hardship; that thereafter, in a certiorari proceeding in this court instituted by the intervener and others to review the Board's decision, plaintiff urged that a junk yard was a permitted use under the ordinance; that after hearing testimony Mr. Justice FENNELLY made an order annulling the Board's decision granting the variance and directing that the matter be remitted to the Board for further evidence on the question of hardship; and that by such order Mr. Justice FENNELLY held that a junk yard was a prohibited use.

In the third defense the City alleges that pursuant to Mr. Justice FENNELLY's order this plaintiff and the defendants proceeded with the rehearing before the Board and submitted their proof; that the Board thereupon.denied plaintiff's application for a variance; that in another certiorari proceeding brought by this plaintiff in this court Mr. Justice WENZEL affirmed the Board's determination, and that plaintiff by such conduct " has admitted that a junk yard is a prohibited use within a Business A District, and is bound by such admission."

In the fourth defense the City alleges that the Appellate Division of this department has dismissed as academic plaintiff's appeal from Mr. Justice FENNELLY's order on the ground that by going ahead with the rehearing he had waived his right to prosecute his appeal.

To summarize these five defenses: The first and fifth defenses are to the effect that plaintiffs are barred from maintaining this action because the first decision of the Board of Appeals construing the Zone Ordinance, and the decision of Mr. Justice STODDART, denying the application of plaintiff Morris Kaufman for judgment on the pleadings in the proceeding brought by him to review the Board's decision, are *res judicata* on the issue now sought to be presented in this action. The second, third and fourth defenses are to the effect that plaintiffs are barred from maintaining this action because the following subsequent decisions are also *res judicata*: The decision of Mr. Justice FENNELLY annulling the variance granted by the Board's second determination of July 15, 1940, and remitting the matter to the Board for rehearing; the decision of the Appellate Division dismissing an appeal therefrom as academic; the third decision of the Board after the rehearing denying the variance; and the decision of Mr. Justice WENZEL affirming this last determination of the Board.

In the opinion of the court all these defenses are without merit and must be dismissed for several reasons:

(1) All three decisions of the Board — the first construing the Zone Ordinance, the second granting the variance, and the third denying the variance — which are the foundation of the subsequent certiorari proceedings and the prior decisions in . this court, are a nullity and void.

In order to obtain the first decision of the Board, the City alleges in its answer that the parties " appeared before " the Board and " submitted " to it the question of interpretation. In other words, the parties informally came directly to the Board and each asked, in effect, for a ruling or declaratory judgment of the Board in his or its favor. In order to obtain the second decision of the Board, the City alleges that plaintiff Morris Kaufman presented his petition directly to the Board asking for a variance. In order to obtain the third decision of the Board, it appears from the City's answer that the parties again voluntarily and informally appeared before the Board and submitted their evidence. The voluminous exhibits submitted by the City clearly demonstrate and confirm that this is all that was done; and they also confirm the fact, fairly to

be inferred from the allegations in the pleadings, that no application was ever made to the local Building Inspector for a building permit or for a certificate of occupancy, pursuant to section 8 of the Zone Ordinance.

Under that section the local Building Inspector is the one who, in the first instance, is charged with the duty of administering the provisions of the Zone Ordinance and enforcing compliance therewith. The Board of Appeals, as its name implies, is vested, pursuant to section 9 of the Ordinance, only with the power to hear and determine appeals from decisions of the Building Inspector. Thus, section 9 specifically says that the Board " shall have general supervision of the work of the Inspector of Buildings and shall have power to hear and decide appeals from and to review any order or decision by him made."

The authority under section 9 to supervise the work of the Inspector plainly implies that which section 8 expressly directs; namely, that the Inspector is the one who shall do the work and make all the decisions in the first instance. The authority of the Board may then be invoked and its revisory power may then be exercised only upon an appeal from such decisions of the Building Inspector. Neither expressly nor impliedly does the Ordinance permit the Board to exercise original jurisdiction upon any matter on an application made directly to it. Nor does the Ordinance permit any matter to be referred to the Board by the Inspector or any other person for action in the first instance. The provisions of section 81 of the General City Law (pursuant to which this Zone Ordinance was enacted) also clearly indicate that under this Ordinance the Board of Appeals has been vested only with the appellate power of review and revision of the Building Inspector's decisions.

In other words, in the absence of an application to the Building Inspector for a building permit or certificate of occupancy, in the absence of a denial of such application by him on the ground that the proposed use violates the Zone Ordinance, and in the absence of an appeal from such decision to the Board of Appeals, the Board has no jurisdiction or power to make any ruling or declaratory judgment as to the meaning of any provision of the Ordinance. Only as an incident to the decision of an appeal duly taken to it from such a decision of the Inspector is it empowered to make such a ruling.

There is one exception, however: The Board does possess original jurisdiction to grant a variance of the Zone Ordinance. But again, this power may be invoked and may be exercised

only upon an appeal from the decision of the Building Inspector. For it is only upon such appeals " where practical difficulties or unnecessary hardships arise from the literal application of this Ordinance in a particular case " that the board is permitted to grant a variance (Glen Cove Zone Ordinance, § 9). This provision follows the basic statute which states that the " board of appeals shall have the power *in passing upon appeals* to vary or modify " the provisions or the application of a Zoning Ordinance in cases of practical difficulty or unnecessary hardship. (General City Law, § 81, subd. 4. Italics supplied.)

The authorities sustain the view that a local board of appeals may not, except on an appeal from the decision of the official charged with enforcement of the ordinance, exercise original jurisdiction. (*Matter of Mamaroneck Commodore, Inc.,* v. *Bayly,* 260 N. Y. 528, affg. 233 App. Div. 741 [Second Dept.]; *Matter of Von Elm* v. *Zoning Board of Appeals of Village of Hempstead,* 258 App. Div. 989 [Second Dept.]; *Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 227.) While in these cases the Village Law was involved, the decisions are equally applicable here since the provisions of section 81 of the General City Law are substantially the same as the provisions of section 179-b of the Village Law.

In the *Mamaroneck* case the property owners presented their petition directly to the Board, asking for a variance on the ground of unnecessary hardship. The Board of Appeals denied the application. The Special Term, the Appellate Division and the Court of Appeals all held that the Board of Appeals lacked the jurisdiction or the power to hear any application in the first instance and that, therefore, its action was a nullity.

In the *Von Elm* case the Appellate Division of this department again reached the same conclusion, pointing out that the Board of Appeals was without jurisdiction to act in the first instance, unless of course the ordinance permits the matter to be referred to it for original action. There was not such permission there; nor is there any here.

In the *Dowsey* case Judge (now Chief Judge) LEHMAN expressly stated that the function of the Board of Appeals " is to provide a measure of flexibility in the application of a general rule imposed for the general welfare," but that " it cannot act until the owner has applied for permission to erect a building which does not comply with the ' strict letter ' of the zoning ordinance." (To the same effect, see *Matter of Levy* v. *Board of Standards & Appeals,* 267 N. Y. 347, 353.)

As all three decisions of the Board of Appeals were based on applications made directly to it and did not involve or require the review or revision of the decision of the Building Inspector, the Board had no jurisdiction or power to make such decisions. Hence, the Board's decisions are a nullity and cannot be pleaded as *res judicata*. It is well established that the " attempted action of a public body without power is void and may be attacked for want of jurisdiction at any time when an attempt is made to enforce claims founded upon such action." (LEHMAN, J., *Matter of Long Island R. R. Co.* v. *Hylan*, 240 N. Y. 199, 208.)

Of course, it may be argued, as indeed the City does, that the plaintiff Morris Kaufman voluntarily submitted to the jurisdiction of the Board. Such submission, however, cannot give vitality to the Board's decisions . Until an appeal is taken to the Board from the decision of the Inspector it has no jurisdiction of the subject matter. Where any body lacks jurisdiction of the subject matter, it is fundamental that such jurisdiction cannot be conferred either by the conduct or consent of the parties. It is only where a tribunal has jurisdiction of the subject matter that the parties by their conduct may submit themselves personally to its jurisdiction or waive any incidental procedural requirements.

(2) Assuming, however, that the first decision of the Board construing the Zone Ordinance be deemed valid, it is still unavailable as a bar to this action. That decision merely held that in a business district junk yards generally are prohibited. Plaintiffs do not attack this interpretation. In this action plaintiffs pose an entirely different proposition; namely, whether a junk yard may be maintained in a business district when the junk is kept in piles not over three feet high. Both the pleadings and the City's exhibits clearly show that no such proposition was ever raised or decided by the Board when it made its first decision.

(3) As to the second and third decisions of the Board relating to the variance, assuming that they are valid, they cannot, in any event, be *res judicata* here. The primary purpose of the proceedings which resulted in these two decisions and of the subsequent certiorari proceedings based thereon, was to obtain a variance of the Zone Ordinance as a matter of favor and discretion. In this action, however, plaintiffs seek a declaratory judgment as to the meaning of the Ordinance which will enable the plaintiff Morris Kaufman to maintain his junk business, not as a matter of favor, but as a matter of absolute right.

The relief obtainable and the basis therefor in one have no connection with the relief obtainable and the basis therefor in the other, except of course that if relief be actually obtained in the one the other becomes unnecessary. In effect, both furnish concurrent, not exclusive, remedies. Under no circumstances, therefore, can it be said that there is such a measure of identity between the two that a judgment in the subsequent suit will destroy or impair rights established by the judgment in the prior proceedings. These rights, whatever they are, will remain unaffected and unimpaired. Without such measure of identity, the judgment in the prior proceedings is not *res judicata.* (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304, 306, 308; *Donahue* v. *New York Life Ins. Co.,* 259 N. Y. 98, 102, 103; cf. *Arverne Bay Constr. Co.* v. *Thatcher,* 278 N. Y. 222; *Baddour* v. *City of Long Beach,* 279 N. Y. 167; *Dowsey* v. *Village of Kensington,* 257 N. Y. 221, *supra.*)

In the *Arverne* case it was held that decisions denying a variance will not estop a plaintiff from thereafter attacking the constitutionality of a zone ordinance as applied to his property. This holding was based on the fact that the issues on an application for a variance are fundamentally different from the issues in an action attacking the constitutionality of the ordinance. In the *Baddour* case the court again took the same view. It should also be noted that in the *Baddour* case one of the principal purposes of the action was to obtain a declaratory judgment of interpretation as to whether the Long Beach ordinance by its terms prohibited the conduct of a boarding house on plaintiff's premises. In the *Dowsey* case, where plaintiff brought an action attacking the ordinance's constitutionality, the Village took the position that such action was premature until plaintiff had exhausted his remedy by applying for a building permit and the Board of Appeals had denied a variance. The court, overruling this contention, held that the remedy before the Board of Appeals is inadequate because, as already stated, the only function of the Board " is to provide a measure of flexibility in the application of a general rule " but that " it cannot act until the owner has applied for permission to erect a building which does not comply with the ' strict letter ' of the zoning ordinance " (257 N. Y. 221, 227).

If the decisions of a zoning board of appeals and of the courts on a plea for a variance of the zone ordinance are not a bar to a subsequent suit seeking a declaratory judgment that the ordinance is void as to plaintiff's property because it violates a constitutional provision, it is obvious that such decisions

are not a bar to a subsequent suit for a declaratory judgment that a certain provision of the ordinance, by its terms, does not prohibit a use of plaintiff's property. For in either case the court must analyze and construe primarily the ordinance and grant or deny to plaintiff's property an exemption from its provisions. And in either case the remedy by appeal to the local board of appeals and thereafter by certiorari to the courts is inadequate, as essentially the board of appeals is an administrative body whose function is strictly limited to providing a measure of flexibility in the application of the zoning ordinances. (Cf. *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, *supra; Matter of Reed* v. *Board of Standards & Appeals*, 255 N. Y. 126, 134, 135; *Matter of Thomas* v. *Board of Standards & Appeals*, 263 App. Div. 352.) "There can be no relief in such case by appeal to an administrative body vested with limited powers." (LEHMAN, J., *Matter of Levy* v. *Board of Standards & Appeals*, 267 N. Y. 347, 354, *supra*.)

(4) Assuming that the second and third decisions of the Board relating to the variance be deemed valid, and assuming further that these decisions of the Board and the subsequent decisions of the courts thereon had determined the question now sought to be raised in this action, nevertheless such determination would not be binding and would not be *res judicata* in this action. This follows from the fact that any issue as to the proper legal interpretation of an ordinance, even if tendered by the pleadings or the parties and decided by the board and the courts, is wholly immaterial to the only issue which is properly before the board or the courts on an application for a variance on the ground of unnecessary hardship. That issue is whether the facts and circumstances presented show that the property owner will suffer a hardship which is exceptional, special or unique when contrasted with the hardships suffered by other owners in the same zone. (*Matter of Thomas* v. *Board of Standards & Appeals*, 263 App. Div. 352, 354, and cases there cited.) In a proceeding for a variance any issue as to whether, as matter of law, the contemplated use of a petitioner's property is forbidden or allowed by the zone ordinance is collateral. It is neither relevant to the question involved, nor is it within the scope of the issue properly before the board or the court for decision. For implicit in every variance proceeding is the justified assumption that the ordinance prohibits the proposed use. Consequently, in such proceeding, any decision as to whether the ordinance, by its terms, does or does not prohibit the proposed use, is unnecessary and is a decision upon an immaterial issue. It is well established that

any decision upon an immaterial issue is not binding in future litigation. (*Rudd* v. *Cornell*, 171 N. Y. 114, 128, 129; *Silberstein* v. *Silberstein*, 218 N. Y. 525, 528; *Donahue* v. *N. Y. Life Ins. Co.*, 259 N. Y. 98, 102; cf. *Arverne Bay Constr. Co.* v. *Thatcher*, 278 N. Y. 222, *supra*.)

"A judgment is conclusive upon the parties only in respect to the grounds covered by it and the facts necessary to uphold it, and although a decree, in express terms, professes to affirm a particular fact, yet, if that fact was immaterial to the issue and the controversy did not turn upon it, the decree will not conclude the parties in reference to such fact. A judgment does not operate as an estoppel in a subsequent action between the parties as to immaterial or unessential facts, *even though put in issue by the pleadings and directly decided*. It is final only as to such facts as are litigated and decided, which have such a relation to the issue that their determination was necessary to the determination of that issue." (*Rudd* v. *Cornell*, 171 N. Y. 114, 128. Italics supplied.)

Accordingly, plaintiffs' motion for judgment on the pleadings should be granted; the City's cross motion for judgment on the pleadings should be denied; and the plaintiffs' motion for an injunction *pendente lite* should be dismissed as unnecessary.

Submit order and judgment.