In the Matter of JOHN SCARPATI et al., Petitioners, against RALPH FERIOLA et al., Constituting the Zoning Board of Appeals of the City of Yonkers, Respondents. ANNA LA ROCCA et al., Intervenors-Respondents.

Second Department, May 18, 1959.

112

*Morton N. Wekstein* for petitioners.

*J. Raymond Hannon, Corporation Counsel,* for respondents.

*Heyman Rothbart, Mortimer M. Rothstein* and *Irwin Panken* for Anna La Rocca and others, intervenors-respondents.

*Samuel Grad* for Tuckahoe Terrace Cooperative, Inc., intervenor-respondent.

BELDOCK, J. The facts are undisputed.

On July 6, 1953 the owners of a parcel of land on the southeast corner of Bronxville and Tuckahoe Roads in Yonkers filed plans for the erection of a 72-family, 6-story apartment building. The zoning ordinance then in effect placed this property in an " A-2 " district, wherein high density apartment houses were a permitted use.

On September 14, 1953 a new zoning ordinance (The City of Yonkers, N. Y., Zoning Ordinance of 1953) was enacted, effective November 15, 1953, changing the district in which the property is located to " MG ", wherein the proposed use is not permissible. However, section 9-A of the new ordinance (as amd. March 23, 1954 and May 11, 1954) provides, among other things, that nothing contained in the ordinance should require any change in the plans, construction, or designated use of a building for which completed plans had theretofore been filed, if (a) construction was commenced within 210 days of the date of the permit, (b) the ground-story framework, including the second tier of beams, was completed within one year of the date of the permit, and (c) the entire building was completed within two years from the date of the permit.

On November 30, 1953 a permit for the erection of the building was issued by the Superintendent of Buildings of the City of Yonkers (hereinafter referred to as the " Superintendent "). In April, 1954 construction was begun. On May 24, 1954 amended plans were filed calling for a reduction of the number of apartments from 72 to 62.

On June 7, 1954 four of the present petitioners and others (owners of nearby property) instituted an action against the City of Yonkers and others to restrain construction on the grounds that (1) construction contravened the applicable provisions of the 1953 zoning ordinance, (2) the 1954 amendments extending the time for commencement of construction were unconstitutional. On April 25, 1955 judgment was granted enjoining further construction of the building. On October 31, 1955 this court reversed the judgment and dismissed the complaint. On May 24, 1956 the Court of Appeals affirmed the judgment entered on the order of this court. (*Seltzer* v. *City of Yonkers,* 286 App. Div. 557, affd. 1 N Y 2d 782.) On June 14, 1957 the judgment of the Court of Appeals was entered.

On September 12, 1957 the time to make application to the United States Supreme Court for a review expired. Thus there was a final judicial determination that the building permit of November 30, 1953 was legally issued and that construction thereunder was commenced within the time limited by the zoning ordinance.

On October 17, 1957 the Superintendent indorsed on the original permit a renewal thereof.

On January 31, 1958 petitioners appealed to the Zoning Board of Appeals of the City of Yonkers (hereinafter referred to as the " Board ") from the " decision " of the Superintendent renewing the permit on the grounds that (a) there was no statute or ordinance which authorized him to grant a renewal, (b) the original permit had expired because the owners had not completed the ground-story framework and the second tier of beams within one year of the date of the permit and had not completed the entire building within two years from the date of the permit, and (c) the owners had no excuse for noncompliance with the time limitations contained in the zoning ordinance.

On March 4, 1958 the Board held that the action of the Superintendent was proper because he has the right to renew permits where construction is commenced within one year after issue of the permit. The Board further held that, pursuant to the authority vested in it by subdivision 4 of section 81 of the General City Law, it had the power in passing on appeals to extend the time limitations contained in the zoning ordinance and, since the delay in construction was occasioned solely by the prior litigation instituted by four of the present petitioners, there were present such practical difficulties and unnecessary hardship in the way of carrying out the strict letter of the ordinance as to warrant an extension of time for the construction.

On March 21, 1958 petitioners commenced this proceeding to annul the determination of the Board approving the renewal of the building permit, and to declare that all rights to build the apartment house had expired. On June 9, 1958 the proceeding was transferred for disposition to this court, where it was argued on December 1, 1958. By that time the building had been completed, and a certificate of occupancy had been issued. The premises are now completely occupied.

In our opinion, the proceeding should be dismissed.

Subdivision 4 of section 4 of the Building Code of the City of Yonkers (General Ordinance No. 9-1926, as amd.) provides that a building permit expires by limitation if no work is commenced thereunder within one year from the time of issuance.

Here, construction was commenced in April, 1954, which was within one year from the time of issuance of the permit on November 30, 1953. Therefore, the permit *did not expire* by reason of the limitation contained in the *building code* and there was no necessity for its renewal. Therefore, if we assume, as petitioners argue, that there was no necessity for renewal and no statutory authority giving the Superintendent power to grant the renewal, that his action was unauthorized, superfluous, and without legal significance, it follows that petitioners' appeal to the Board falls because there was nothing from which they could appeal, and this proceeding must be dismissed.

If we assume, however, as the minority concedes, that the renewal of the permit was in accordance with customary procedure and amounted to no more than a determination that the original permit had not expired by reason of the time limitation contained in the building code because construction had commenced within one year after its issuance, then this proceeding must, nevertheless, be dismissed because, as stated, the minority concedes that the renewal on that ground was proper. If the minority is correct in its opinion that the original permit had expired by reason of the limitations contained in section 9-A of the 1953 zoning ordinance and that there is no power to vary those time limitations, then this proceeding must be dismissed because the question whether the permit already issued had so expired may not be determined by the Superintendent, nor by the Board, nor by this court in an article 78 proceeding.

However, it is our opinion that this proceeding should be dismissed because the Board had the power to vary the provisions of the zoning ordinance by granting an extension of time within which to complete the construction and that its power was properly exercised under the circumstances here disclosed.

Subdivision 4 of section 81 of the General City Law grants a board of appeals power, in passing on appeals, to vary or modify the application of *any* of the regulations or provisions of a zoning ordinance relating to the construction of buildings, where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of any such ordinance. The time limitations contained in section 9-A of General Ordinance No. 24-1953 are part of the zoning ordinance, the provisions of which the Board is given power to vary or modify, not only by the State statute mentioned, but also by section 10-D-10 of the very ordinance in question. It is not necessary, as the minority contends, that power be granted by the zoning ordinance specifically to vary or modify the time provisions of

section 9-A because the power to vary or modify *any* of the provisions of the zoning ordinance is specifically granted by the cited sections of the statute and the ordinance. The jurisdiction of the local legislative body is not infringed by the Board in granting this extension of time where special circumstances exist because section 10-D-10 of the ordinance expressly provides that "*no* provision" [emphasis supplied] of section 10 shall be construed to abridge or curtail the powers vested in the Board under the cited State statute. The power of the Board to vary or modify the application of any of the regulations or provisions with respect to construction includes the power to vary provisions relating not only to the manner of construction, but also to the *time* of construction. That the owners demonstrated practical difficulties and unnecessary hardship in the way of carrying out the time conditions imposed by section 9-A of the ordinance is clear from the record and is conceded by the minority. The time limitations imposed by that section of the ordinance were not complied with solely because of the prior litigation instituted by four of the present petitioners and by petitioners' appeal to the Board now under review. Insofar as *Matter of Glass* v. *Zoning Bd. of Appeals of City of Yonkers* (5 A D 2d 991) held that there was no power to extend the time limits contained in section 9-A of the zoning ordinance, it was unnecessary to the determination. In any event, insofar as it did so hold, it is overruled.

The cases cited by the minority with respect to the proof required before a board of appeals may grant a variance are not applicable. The cases apply only where a use variance is involved. It has been held that these requirements do not apply to an area variance. (*Matter of Village of Bronxville* v. *Francis,* 1 A D 2d 236, affd. 1 N Y 2d 839.) We now hold that these requirements do not apply to a time variance.

Any result other than the one recommended would be harsh, inequitable and unjust. Petitioners did not obtain a stay during the nine months from the institution of this proceeding to the time of the argument in this court. During that period construction (on which only $425.10 had been spent at the time of the hearing before the Board) was processed to completion at a cost of approximately $750,000. A lending institution has given a mortgage for over $700,000, which the Federal Housing Administration has insured. All of the 61 apartments available for sale in this co-operative apartment house have been sold. Approximately 62% of the members of the co-operative are veterans. The premises are now completely occupied.

The proceeding should be dismissed, with $50 costs and disbursements.

NOLAN, P. J. (dissenting). Our function in this proceeding is to determine whether the Board illegally determined to the prejudice of the petitioners that the building permit issued in 1953 for the erection of an apartment house on the subject premises was properly and lawfully renewed in 1957 by the Superintendent, despite the conceded fact that the conditions imposed by the saving clause contained in the 1953 ordinance had not been complied with. The decision of the Board was based on the conclusions that it was empowered by law to make such determination as in its opinion should be made upon the hearing of an appeal, that it had the power on hearing an appeal in a case involving practical difficulties or unnecessary hardship to vary the application of any of the regulations of the ordinance relating to the use of property, and that practical difficulties and unnecessary hardship had prevented the owners of the subject property from carrying out the strict letter of the *saving clause* contained in the ordinance. Consequently, the Board determined that the conditions imposed by the saving clause should be varied or dispensed with so as to permit the renewal of the building permit, and, on the basis of such variance or dispensation granted in 1958, decided that the building permit could properly have been renewed in 1957, and that the action of the Superintendent in renewing it in 1957 was regular and proper.

In my opinion the decision made by the Board was without warrant in law and petitioners properly commenced this proceeding to obtain relief from it. Originally, their right to appeal from the renewal of the building permit might well have been questioned. They were not parties to any application made to the Superintendent and he had not refused any request or demand made by them. However, the Board entertained their appeal and decided the question presented against them, on the merits. Faced with that determination, which may, if permitted to stand, preclude them from obtaining relief in any other action or proceeding (cf. *Matter of Beckmann* v. *Talbot,* 278 N. Y. 146), petitioners are parties aggrieved and are entitled to a review of the decision of the Board in this proceeding.

It is not clear from the record whether the permit issued in 1953 expired by its terms prior to its renewal in 1957. It may be assumed from the findings by the Board and from statements contained in the briefs that the permit was issued for

a term of one year and expired automatically on November 29, 1954. There is no express authority in the zoning ordinance or in. the building code of the City of Yonkers (General Ordinance No. 9, 1926, as amd.) for the renewal of a building permit. Neither is there any authority, however, for limiting the duration of such a permit to one year. The zoning ordinance, except with respect to variances and exceptions, provides (§ 12–B–50) that the permit shall authorize "the erection of the structure or building", and the building code (§ 4, subd. 4) provides for the expiration by limitation of permits under which no work is commenced within one year. It may be assumed that it is because of the latter provision and to facilitate enforcement of the building code that the Superintendent of Buildings issues permits for one year only and, as the findings by the Board indicate, customarily renews them after the year has expired, if construction has been commenced during that period. The permit in the instant case appears to have been renewed as a matter of course, in accordance with customary procedure, and the act of renewal was apparently intended to amount to no more than a determination that the permit had not expired, since construction had commenced. If nothing more were involved than the right of the Superintendent to renew a permit under such circumstances so as to permit the continuation of construction work which would not be in violation of law, I would have no doubt that the Superintendent's action could be sustained, even though no specific authority had been given him to renew a permit. However, that was not all that was involved in the instant case. Upwards of two years had elapsed since the issuance of the permit, and the work required to be done within one year had not been performed, nor had the building been completed. Consequently, any further construction work on the apartment house would have violated the restrictive provisions of the zoning ordinance, since the building to be erected was prohibited thereby in an "MG" district, in which the subject property is located. The building code provides (§ 4, subd. 1) that in the event that a building for which a permit has been issued is not built in accordance with the zoning law, the permit shall be deemed revoked, without notice, and it is fundamental that no building permit by an administrative official can effectively authorize the erection of a building or structure in violation of law (*Marcus* v. *Village of Mamaroneck*, 283 N. Y. 325, 330; *City of Yonkers* v. *Rentways, Inc.*, 304 N. Y. 499, 505).

Consequently, when application was made in 1957 for the renewal of the building permit, the owners of the property had no right to proceed to erect the building for which they had filed plans, without further permission by an authorized agency of the city, whether their building permit had expired by virtue of its terms or not. Moreover, whatever power may have been vested in other city officials or departments to grant such permission, the Superintendent had none. His duty was to enforce the ordinance, and he had no authority, except with respect to matters which are not pertinent to this controversy, to vary or modify any of its provisions.

Neither did the Board have any authority to vary or dispense with the provisions of the saving clause. The Common Council, which amended the zoning ordinance in 1953, was not obliged to make any concessions or to extend any privileges to property owners who had filed plans for the construction of buildings which were prohibited under the new regulations, if such owners had not acquired vested rights under previously issued building permits (*Matter of Glass* v. *Zoning Bd. of Appeals of City of Yonkers,* 5 A D 2d 991). The Common Council elected, however, to extend to such owners the privilege to erect their buildings, but it also specified precisely the conditions under which the privilege might be exercised. Construction of the buildings was required to be commenced and completed within the times limited by the saving clause. The Common Council recognized the right of the Board to vary or modify the application of the new restrictions pursuant to the provisions of the General City Law (The City of Yonkers, N. Y., Zoning Ordinance of 1953, § 10–D–10) but it gave no authority to the Board or to any other city board, department or official to vary, modify or dispense with the conditions which it had attached to the privilege of erecting nonconforming structures without further legislative or administrative permission, or to excuse an owner of land, who desired to exercise that privilege, from compliance with the conditions attached thereto. The legislative intent, as expressed in the 1953 ordinance, seems perfectly clear. Buildings which conformed to the new zoning regulations could be constructed on compliance only with the building code. Nonconforming structures for which plans had been filed could also be constructed without further permission from the Common Council or any other board or department provided they were constructed within the times limited by the saving clause. No action by the Board

was authorized or necessary in either case. Other nonconforming structures, including those for which plans had been filed and which were not erected within the times limited could be constructed only if permitted by the Board under authority granted by the ordinance or, in cases of practical difficulty and unnecessary hardship in carrying out the strict letter of the new regulations, by the General City Law. The circumstances under which the Board could act and its authority to grant relief in addition to that specifically provided by the General City Law were clearly defined. No mention was made of power to amend or modify the provisions of the saving clause. On the contrary the ordinance expressly provided (§ 10–D–10.1) that the jurisdiction of the Common Council should not be "infringed upon by action of the Board of Appeals in any matter which should appropriately be the subject for an amendment to the Zoning Ordinance or Zoning Map". The Board could act if a property owner was prevented by practical difficulties or unnecessary hardship from complying with the new zoning regulations which applied to his property. It was given no authority to act when a property owner was unable to meet the conditions which would have called the saving clause into operation, even though practical difficulty and unnecessary hardship might have prevented the owner from meeting those conditions (*Matter of Glass* v. *Zoning Bd. of Appeals of City of Yonkers*, 5 A D 2d 991, *supra*).

The General City Law gives a board of appeals no greater authority than that provided by the ordinance. Section 81 of that statute provides that where there are practical difficulties or unnecessary hardship in carrying out the strict letter of a zoning ordinance, a board of appeals may grant relief. Under that grant of power, however, a board of appeals exercises a limited jurisdiction. Its function is to provide a measure of flexibility in the application of the general rules regulating the construction of buildings or the use of land. It cannot act until an owner has requested permission for a use of his land which does not comply with the strict letter of the ordinance (cf. *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 227). If it does act, it has authority to vary or modify only the application of the provisions of the ordinance relating to the use, construction or alteration of buildings or the use of land. A board of appeals may act to relieve difficulty or hardship in *carrying out* the restrictive provisions of the ordinance. It may not act to relieve difficulty or hardship in avoiding them.

In the instant case, the owners of the subject property have failed to demonstrate any difficulty or hardship in carrying out the strict letter of the ordinance insofar as it regulates the use of property in an "MG" district. What they have demonstrated, or at least the Board so. found, is that they have suffered difficulty and hardship which prevented them from avoiding the new regulations which affect their property. Neither did the Board vary or modify any of the provisions of the ordinance relating to such use. What the Board did was to dispense with the conditions, provided by the legislative branch of the city government, that limited the time within which buildings or structures which did not conform with such regulations could be constructed without application to the Board for relief. Neither the statute nor the ordinance gave the Board any such dispensing power. If it be assumed, however, that what the Board actually accomplished was to vary the application of the provisions of the ordinance which regulate the construction of buildings in an "MG" district, because the owners had been prevented by practical difficulty or unnecessary . hardship from complying with those regulations, the reasons which the Board gave for its action are insufficient to justify such relief, and there was no proof of any facts which could sustain such a determination. No one has attempted to establish in this proceeding that the property in question would not yield a reasonable return if used only for a purpose allowed in an "MG" district (cf. *Matter of Otto v. Steinhilber,* 282 N. Y. 71, 76; *Matter of Taxpayers' Assn. of South East Oceanside v. Board of Zoning Appeals of Town of Hempstead,* 301 N. Y. 215; *Matter of Crossroads Recreation v. Broz,* 4 N Y 2d 39, 43). A variance may not be granted because land which can yield a reasonable return, if used as permitted by pertinent zoning regulations, would yield a greater return if used for a prohibited purpose (cf. *Matter of Joyce v. Dobson,* 255 App. Div. 348, 350; *Matter of Stillman v. Board of Stds. & Appeals of City of N. Y.,* 222 App. Div. 19, affd. 247 N. Y. 599), nor should it be granted because a property owner has been unable to meet conditions imposed by law which would have given him relief from such regulations without a variance, or because he has incurred expense in reliance on a permit illegally issued.

It may be that the circumstances disclosed might justify the granting of relief by the Common Council to the owners of the subject property. That question may not be determined, however, in this proceeding. It is sufficient to say that these circumstances did not justify the granting of relief by the Board of Appeals.

The determination should be annulled, and the matter should be remitted to the Zoning Board of Appeals of the City of Yonkers, with directions to reverse the decision of the Superintendent of Buildings of the City of Yonkers.

MURPHY, HALLINAN and KLEINFELD, JJ., concur with BELDOCK, J.; NOLAN, P. J., dissents and votes to annul the determination and to remit the matter to the Zoning Board of Appeals of the City of Yonkers, with directions to reverse the decision of the Superintendent of Buildings of the City of Yonkers, in opinion.

Proceeding dismissed, with $50 costs and disbursements.