Charles G. Tierney, J.
In this article 78 proceeding, petitioner seeks an order vacating the determination of the Landmarks Preservation Commission designating certain of petitioner’s buildings as landmarks. The petition challenges the constitutionality of the Commission’s action and the' enabling legislation.
Petitioner, the Trustees of the Sailors’ Snug Harbor in the City of New York, is a charitable corporation administering a trust established by the will of Captain Robert Richard Randall, who died in 1801, for the purpose of maintaining “aged, decrepit and worn out ” seamen. The Trustees operate a home for elderly mariners called “ The Sailors Snug Harbor ” (hereinafter referred to as the Harbor) on an 80-acre site located on Staten Island facing Richmond Terrace and overlooking the heavy marine traffic on the Kill Van Kull. At present about 200 retired seamen reside at the Harbor in a complex of four separate dormitory buildings. There is also an administrative building and a chapel located at the Harbor.
The. complex of buildings was constructed over a 50-year period between 1830 and 1880. The Trustees, believing the *935 present quarters, located on three levels, without elevators. or fireproofing, to be obsolete and unattractive to the mariners, as well as cramped, have made plans for the construction of new, modern buildings. These plans include the demolition of the four dormitory buildings which, if left standing, will obscure the view of the Kill Van Kull from a proposed high rise apartment building to be constructed on the most prominent part of the Harbor’s property. This building is to be occupied by the mariners, the beneficiaries of the trust.
On September 22,1965, the Landmarks Preservation Commission (hereinafter referred to as the Commission) held a public hearing at which the Harbor buildings were considered. Several architects spoke in favor of the designation of the buildings as landmarks on the grounds that the main buildings are a notable group of G-reek revival buildings, and that the chapel is a fine and distinctive example of Anglo-Italianate style. The Trustees submitted a written memorandum to the Commission in which they argued that the needs of the mariners for more modern facilities should be considered more significant than any architectural merit the buildings might possess. They also pointed out that the public takes no interest in the Harbor and that tourists seldom visit it. Kepresentatives of the Trustees also spoke at the hearing against the designation. However the Commission, on October 14, 1965, designated the Harbor’s buildings as landmarks.
As a result, the Trustees are prohibited from altering or demolishing the buildings unless the Commission grants approval (Administrative Code of City of New York, §§ 207-5.0, 207-6.0). Under the provisions of the New York City Charter establishing the Commission, in order to obtain a certificate of appropriateness permitting demolition of the building, the Trustees, as a tax-exempt property owner, would be required to establish that they had executed an agreement to sell their buildings or to lease them for a term greater than 20 years, contingent on approval of demolition by the Commission (Administrative Code, § 207-8.0, subd. a, par. [2]). Trustees would also be required, in addition to fulfilling other requirements, to show that the buildings were not suitable for carrying out the purposes of the Harbor, and would not yield a reasonable return if not tax-exempt. Substantially less stringent requirements are applicable where the owner is taxed. Basically, he must establish lack of reasonable return (Administrative Code, § 207-8.0).
*936 In addition to precluding alterations or demolition of any of the buildings, the Commission’s designation imposes upon the Trustees the duty, at the risk of criminal sanctions, of maintaining the buildings in good repair.
Petitioner argues that the determination of the Commission should be set aside on the basis of various constitutional prohibitions. This court is well aware of the problem posed by the tendency of property owners in New York City to demolish old and beautiful buildings, which could reasonably be preserved, in order that the owners might harvest a quick profit. Surely the State and city have the power to take reasonable steps to prevent the destruction of the city’s heritage and to provide for the preservation of those buildings that may contribute to civic pride, to the education and cultural benefit of the public, and to encouragement of tourism.
Clearly, ‘ ‘ Aesthetic considerations are * * * not wholly without weight in a practical world ” (Dowsey v. Village of Kensington, 257 N. Y. 221, 230). Assuming, therefore, that the general goals of the Commission do not violate the Constitution, the decisive question of whether the designations in the instant case impose so unreasonable a burden on the Trustees as to constitute an unlawful taking of property without compensation is necessarily posed.
There can be no question but that the designations in the instant case impose a great burden on the Trustees. Since the Harbor is tax-exempt, the import of the designations will be to prevent forever the Trustees from removing the buildings so long as the land on which they are situate is retained as trust property. The Trustees argue, in fact, that the difference in the requirements for the granting of a certificate of appropriateness applicable to tax-exempt, as opposed to taxed, owners is an unreasonable discrimination that deprives the Trustees of the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and section 11 of article I of the New York State Constitution.
Without deciding whether the relevant portion of the Administrative Code is unconstitutional as such on its face, it is clear that paragraph (2) of subdivision a of section 207-8.0 does result in the imposition of an undue burden upon the Trustees in this case. It is undisputed that the present site of the Harbor is peculiarly well adapted for use as a home for retired seamen, since it overlooks the Kill Yan Kull and the marine activity thereon. Yet the Trustees will never be able to utilize fully the site, no matter what events occur, because demolition of the buildings cannot be authorized in the absence of proof that the *937 Trustees are disposing of the property. The Trustees are unable, at the present time, to proceed with their plans for constructing new buildings, since the rear view of the landmarks would obscure the mariners ’ view of the water from the choicest location for the new buildings. The respondent Commission argues that the difficulty does not result in a “ taking of property ”, since the restraint imposed does not preclude use of the property for any use for which it is reasonably adapted, citing Levitt v. Incorporated Vil. of Sands Point (6 N Y 2d 269) and Matter of Setauket Development Corp. v. Romeo (18 A D 2d 825).
It is clear, however, that the restraint imposed here prevents the Trustees in administering the trust from utilizing the land to its best advantage. Moreover, it must be remembered that the regulation in the instant case differs substantially from the zoning regulations which were considered in the Levitt and Setauket cases.
Where a zoning regulation is involved the owner does stand to benefit from enforcement of a common plan or scheme. Here, the Commission has suddenly and without warning imposed a blanket prohibition against alterations or demolitions upon a single property owner. Moreover, since the relation of the type of regulation imposed herein to the public health, safety and general welfare is less direct than in the case of a zoning regulation, it follows that the burden upon the property owner, to be legally permissible, should also be less, or else a taking of property will occur.
As Justice Holmes wrote in Pennsylvania Coal Co. v. Mahon (260 U. S. 393, 415-416): “ The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking”. Where the limit lies is a “ question of degree ’ ’. This court is of the view that the limits of reasonable regulation are exceeded in this case. In addition to the burdens discussed above, the Commission’s designations will forever impose upon the Trustees the burden of using trust funds to keep the designated buildings in good repair. Although the public welfare will justify some incursion upon property rights to prevent the destruction of buildings which are a part of our national and local heritage, the entire burden and cost of their preservation cannot be thrust upon the landowner under the circumstances disclosed herein.
The regulation imposes so disproportionate a burden upon the landowner that it must be set aside in this ease as an *938 unlawful- taking of property without just compensation (see Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222; Matter of Keystone Assoc. v. Moerdler, 19 N Y 2d 78). Accordingly, the application is granted.