Mabio Pittoni, J.
In January, 1957, when the area involved herein was in a Residential-6 zone, the plaintiffs purchased the subject property (hereafter called “the property”) at the southeast corner of Old Country Road and Prescott Street in the Village of Garden City. In March, 1958 they applied unsuccessfully to the village for a rezoning from R-6 (single family residence on plots with a minimum frontage of 60 feet and a minimum area of 6,000 square feet) to C-0 (two-story office).
They have now brought this action for a judgment declaring the zoning ordinance which makes the area in which the property is located R-6 unconstitutional and invalid. Their contentions are that the changes in the area are such that the “ property is not, and cannot, he reasonably adapted to the uses permitted under the zoning ordinance, and the zoning ordinance precludes the use of such property for any purpose for which such property is reasonably adapted,” and that “ The zoning ordinance does not constitute a comprehensive plan, designed to promote and carry out the purposes and objectives set forth in the Village Law as applied to the plaintiffs ’ property.”

A Description of the Property and the Surrounding Area

The property runs easterly from Prescott Street along the southerly line of Old Country Road for approximately 160 feet; and southerly from Old Country Road along Prescott Street for approximately 154 feet.
*480 The property is surrounded on the west, south and east by hundreds of R-6 dwellings built after November, 1946. Further south, starting approximately 1,500 feet from the property, are hundreds of other R-6 dwellings erected before November, 1946. Still further south, starting approximately 3,000 feet from the property, are a number of R-8 homes built on 8,000 square feet mínimums. And still further south, there are a number of R-12 homes built on 12,000 square feet mínimums.
Along the southerly side of Old Country Road, to the west of the property, and for about two blocks, or approximately 550 feet, there is now some undeveloped R-6 land. Then there are some office buildings in a C-0 zone. And then on the westerly side of Washington Avenue there is the county courthouse area.
Again, along the southerly side of Old Country Road, but to the east of the property for about two blocks, or approximately 400 feet, there is some more undeveloped R-6 land. Then there is an attractive school area, and then up to approximately 2,500 feet from the area there is more R-6 land. Half of this area along Old Country Road to the east of the school ground is undeveloped, and the other half has one-family homes thereon.
The north side of Old Country Road is within the Village of Mineóla. Immediately to the front and to the east on the Mineóla side for about five blocks there are only one-family residences. Still looking to the east there are then four blocks of undeveloped land, and still further some factory territory. Looking at the north side of Old Country Road but facing west, that area is covered mostly by office and business buildings.

Analysis of Some Major Testimony

The court will now analyze some of the pertinent testimony.
James A. Heaney, Jr., a real estate appraiser, testified on behalf of the plaintiffs that the property has a present value of $10,000 for residential purposes, but that it is not reasonably adapted for the erection of residences. His opinion was that the proximity of commercial uses, combined with the heavy traffic on Old Country Road, would create such sales resistance that residences erected on the property could be sold only at prices which would make it impossible to realize a profit. His testimony was counteracted by that of Clarence A. Edwards, a real estate broker and appraiser, who testified on behalf of the defendant village that the traffic conditions on Old Country Road were not substantially different from those on many other *481 county roads and wide village streets which have been fully developed for residential purposes, that he valued the plaintiffs’ property for residential purposes at $12,600, and that in his opinion the property could be gainfully utilized for the building of residences.
William V. Brennan, a real estate broker and builder, testified on behalf of the plaintiffs that he had built three homes in Garden City on highly travelled roads and found them very difficult to sell. lie further stated that he had tried to get mortgage loans from the Bayside Federal Savings and Loan Association and the College Point Savings Bank on proposed houses on Old Country Road to sell for $27,500 each, but that his applications had been rejected. Representatives of these two financial institutions corroborated this testimony. However, Jordan E. Krown, a builder who testified on behalf of the defendant village, said that he completed and sold approximately 220 houses in Garden City within the last five years, that 91 or more of these were in the area where the property was located, and that it was entirely feasible to build three houses on the property to be sold for $18,000 each at a profit. He further stated that he could get mortgage financing for such houses on the property from the Long Island Trust Company and the Dime Savings Bank. He was corroborated-in this respect by officers of these two financial institutions; in fact, the Dime Savings Bank officer, Frederick W. Jackson, stated that his bank would lend 90% on $18,000 houses on the three plots to be formed by subdividing the property. Mr. Krown also stated that he had acquired a permit and was beginning to build a house to sell for $25,000 at the southeast corner of Old Country Road at Laurel Street, several blocks to the east of the school ground.
Henry B. Raymore, a planning expert, testified on behalf of the plaintiffs that in his opinion the proximity of the commercial buildings and the heavy traffic on Old Country Road made it financially unwise to build a house facing on Old Country Road. On the other hand, Hugh R. Pomeroy, a zoning and planning expert called on behalf of the defendant village, testified that the Garden City Zoning Ordinances including those involving R-6, R-8, etc., represented a well-balanced and comprehensive plan of land use. He pointed out that heavy traffic and proximity of commercial buildings did not necessarily make the property unusable for residential purposes, and that the property could be used for residential purposes,

*482
Reasoning

This is another attempted invasion by commercial interests into the residential area of Garden City. The village in turn has again mustered all its forces against this further onslaught; and has again asserted its determination to stay predominantly residential.
The ordinance was adopted pursuant to a comprehensive plan and scheme to preserve and enhance the residential character of the village. The residential zoning of the area involved reflects and conforms with sound zoning principles. To successfully attack the validity of this zoning ordinance the assailant owner must show that the ordinance so restricts the use of his property that it cannot be used for any reasonable residential purpose (Arverne. Bay Constr. Co. v. Thatcher, 278 N. Y. 222).
The plaintiffs bought the property, which is 22,400 square feet, in January, 1957, for the sum of $14,900. What impelled them to pay this price for this B-6 property is not disclosed on the record. One expert testified that if the property were zoned C-0 it would be worth $72,400. Another said $32,000. However, various real estate experts also testified in respect to its market value as presently zoned; and to quote from the plaintiffs’ brief: “As presently zoned, the value of the plaintiffs ’ property, according to Mr. Heaney, is $10,000.00 (44). According to Mr. Krown, its value is between $11,000.00 and $12,000.00 (206), and according to Mr. Edwards, its value is $12,600.00 (333). The average of all of these figures is $11,400.00, and this is unquestionably very close to the market value of plaintiffs’ property as presently zoned.”
On this statement alone it is difficult to accept the plaintiffs’ contention that this property cannot now be used for residential purposes. After all, if this piece of empty land in a residential zone is now valued at $11,400, that is good evidence that there are reasonable real estate men and builders who are willing to pay that amount to build residences on the property. If this property, now restricted to residences, cannot be used for residential purposes it must now have an insignificant valuation. But, as stated, the plaintiffs concede that its present market value as presently zoned is $11,400.
The mere presence or proximity of business property or business zone does not necessarily motivate or command the change of adjoining residential property to business zone or district (Shephard v. Village of Skaneateles, 300 N. Y. 115, 119, 120; New York Trap Rock Corp. v. Town of Clarkstown, *483 1 A D 2d 890, 891, affd. 3 N Y 2d 844; Brown v. Village of Owego, 260 App. Div. 328, 334, 335, affd. 284 N. Y. 655). In fact, any such principle would cause unlimited swarming waves of business, zones over previous residential areas. In the language of Hugh it. Pomeroy, “ The mere fact that there is business across the street from this property in general, or actually across the street from the property that lies between the subject property and the park, is no reason for zoning for business. If mere proximity of business makes it necessary to zone other property for business there would be no stopping anywhere. ’ ’
In this connection too we should be concerned with the plight of the adjacent home owners who purchased with the lulling security of the zoning ordinances as a protection against just such an invasion of commercial buildings as here proposed. They bought in a residential zone for residential purposes; not as here, in a residential zone for commercial purposes.
The further contention that Old Country Road is so heavily travelled as to impel rezoning in this case is not persuasive. The record shows that the traffic on Old Country Road in front ■of the property is no heavier than in many other residential areas in the village and county. In fact, it has been held in this court and in the higher courts that heavy traffic does not necessarily warrant the conclusion that property might not be reasonably used for residential purposes (Gardner v. Le Boeuf, 14 Misc 2d 98, Christ, J.; New York Trap Rock Corp. v. Town of Clarkstown, 1 A D 2d 890; affd. 3 N Y 2d 844, supra; Matter of Hayes v. City of Yonkers, 143 N. Y. S. 2d 699, 700, affd. 1 A D 2d 1031; Brown v. Village of Owego, 260 App Div. 328, 332, supra). In the Brown v. Owego case (supra) the property in question was “ located upon a street which is part of Route 17, one of the main-traveled throughfares of the State of New York, and over which there is continuously passing a vast amount of motor vehicle traffic, including heavy freight passage ” (p. 332). In the New York Trap Rock case (supra) the property fronted on a State highway across the street from a quarry in an industrial district. In the Hayes case (supra) the property, which was located in the City of Yonkers, fronted on a main throughfare and a business street.
The fact that the value of the property as presently zoned may be less because of its proximity to commerceal areas or because it is on a highly travelled road, or may be substantially less in value than it would be if it were rezoned C-0 is not a convincing factor in respect to the validity of this zoning ordinance.
*484 In Shephard v. Village of Skaneateles (300 N. Y. 115, 118. 120, supra) the court said: “ Zoning laws * * * necessarily entail hardships and difficulties for some individual owners. * * * A possible depreciation in value is not of too great significance, for the pecuniary profits of an individual are secondary to its public welfare. * * * Either plaintiffs’ property or the land near it would suffer depending on the board’s action, and the board could properly find that the loss sustained by plaintiffs would be offset by the gain to the community in general.”
In Rodgers v. Village of Tarrytown (302 N. Y. 115, 126) the court said: ‘ ‘ While hardships may be imposed on this or that owner, ‘ cardinal is the principle that what is best for the body politic in the long run must, prevail over the interests of particular individuals.’ ”
And in Matter of Wulfsohn v. Burden (241 N. Y. 288, 302) the court said: ‘ ‘ It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value of appellant’s premises. * * * the general welfare of the public is superior in importance to the pecuniary profits of the individual. ’ ’
As for the argument that the property cannot be reasonably utilized for residential development, that has been answered by the experts and other witnesses called on behalf of the defendant. Even if we interpret the evidence most strongly against the defendant village, and most favorably for the plaintiffs, it cannot be said that the conclusions arrived at by the plaintiffs’ witnesses prevail. In fact, the court finds that the weight of the evidence is on the side of the defendant’s witnesses.
Be that as it may, let us go back to fundamentals. Zoning is a legislative function; and a zoning or rezoning ordinance, or an amendment thereto, or a determination refusing to rezone is presumed constitutional and valid. The burden of proving such a legislative act unconstitutional or otherwise invalid is upon the assailant. It has been stated that the assailant is required to show by a fair preponderance of credible evidence that the zoning determination of the legislative body was arbitrary, capricious or unreasonable. If the validity of the ordinance is fairly debatable the judgment of the legislative body is conclusive and beyond the interference of the courts (Linn v. Town of Hempstead, 10 Misc 2d 774, 775, 782; Rodgers v. Village of Tarrytown, 302 N. Y. 115, 121, supra; Shephard v. Village of Skaneateles, 300 N. Y. 115, 118, supra; Matter of *485 Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534, 538, 539; Euclid v. Ambler Co., 272 U. S. 365, 388). However, tbe Court of Appeals bas from time to time put a stronger burden upon tbe assailant. In a recent case it said tbe burden of proof is “ beyond a reasonable doubt * * * ‘it is only as a last resort ’ that courts strike down legislative enactments on tbe ground of unconstitutionality ” (Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219). '

Conclusion

Whether tbe test of burden of proof is by a fair preponderance of credible evidence or beyond a reasonable doubt, tbe plaintiffs have not sustained their burden. They have failed to show that tbe defendant village’s refusal to rezone tbe subject property from R-6 to C-0 was arbitrary, capricious or unreasonable.
Tbe complaint is dismissed.
This is tbe decision of tbe court pursuant to section 440 of tbe Civil Practice Act.
Settle judgment on notice.