Bernard S. Meyer, J.
This action seeks a judgment declaring that the Zoning Ordinance of the Village of Old Westbury is unconstitutional insofar as it prohibits business use of plaintiff’s property. The complaint, dismissed under rule 106 of the Rules of Civil Practice at Special Term (14 Misc 2d 98), was held sufficient by the Appellate Division (8 A D 2d 736), and the Court of Appeals dismissed an appeal from that determination (7 N Y 2d 799). The constitutional issues raised are (1) confiscation, in that the property is not reasonably adapted to the use for which zoned and in that the ordinance destroys the greater part of its value, (2) arbitrariness, in that there is no substantial relationship between the zoning imposed and public health, safety, morals or general welfare, and (3) that the zoning is not in accord with a comprehensive plan. After trial, judgment will be entered for the defendants, dismissing the complaint on the merits, without costs.
On November 26,1941 plaintiff became the owner of a parcel of approximately 19 acres of land bounded on the south by Jericho Turnpike, on the west by Glen Cove Road and on the north and east by Hillside Avenue Avhich runs in a southeasterly arc from Glen Cove Road to Jericho Turnpike. In general layout the parcel is roughly triangular, or more accurately, pie-shaped. Since the adoption of the zoning ordinance on May 8, 1926 the parcel has been zoned Residence B. The ordinance establishes five districts: Residence BB, requiring an area of two acres, Residence B, requiring an area of one acre, Residence A, requiring an area of 8,000 square feet, Business A, allowing designated *513 service and retail establishments, and Business C, allowing such establishments plus an additional group of service establishments and limited manufacturing operations as an accessory to a retail sales use. In Residence BB and Residence B districts, permitted uses are (1) detached single-family dwelling, (2) office of a professional person residing in such a dwelling, under specified limitations, (3) public school, (4) farm, provided there be no advertising and no products offered at roadside for sale, or sold at retail, and conditionally permitted uses are (1) a nonprofit college or nonprofit private school on a lot of not less than 50 acres (§ 401, subd. [11]; § 1002, subd. [4]), (2) a public utility, if the use in the particular location is necessary and convenient for efficient operation of the system or for service by the utility to the neighborhood in which the use is located (§ 401, subd. [5]; § 1002, subd. [14]) and (3) a church, parish house, parochial school, nonprofit college or nonprofit private school (with specified exceptions) approved by the Board of Regents or Department of Education, nonprofit memorial building, nonprofit library, nonprofit museum or art gallery (§ 1002, subd. [15]). Residence A uses include all of the above, but allow customary home occupations conducted solely by the occupant, with area and parking limitations.
Jericho Turnpike is the southern boundary of the village and Northern State Parkway (which in this area runs north and south) its western boundary. To the east of the subject parcel the entire Jericho Turnpike frontage of the village is zoned Residence B to a depth of 300 feet. To the west of and directly across Glen Cove Road from the subject parcel in an area bounded by Jericho Turnpike on the south, Northern State Parkway on the west, Hillside Avenue on the north and Glen Cove Road on the east, the southernmost 350 feet is zoned Business C and is occupied by a gasoline station and a Carvel stand and the remainder of the area is zoned Residence A. In January, 1957 the Village Planning Board, reporting as required by the ordinance, on an application to rezone the Residence A area to Business A, certified that construction of a restaurant as proposed in the application for rezoning was consistent with the use of surrounding property, but the application was later withdrawn. All of the remainder of the village is zoned Residence BB except the following areas which are zoned Residence B: across Hillside Avenue to the north of the subject parcel to a depth of 300 feet; north of Hillside Avenue a triangular area west of Glen Cove Road and east of Northern State Parkway; north of Hillside Avenue a roughly rectangular area east of Glen Cove Road approximately 400 feet deep and running north *514 about 3,000 feet; north, of Old Westbury Road east of Glen Cove Road approximately 600 feet deep and running north about 2,200 feet to the village line.
Glen Cove Road is to be widened and the county has already taken for this purpose the westernmost 7 feet of plaintiff’s Glen Cove Road frontage. Hillside Avenue is to be elevated and Jericho Turnpike to be widened and for this purpose the State has already taken part of the Jericho Turnpike frontage and a triangular area at the eastern end of subject parcel, a total of approximately five acres in area, for widening and drainage. On the south side of Jericho Turnpike in the Village of Westbury, facing 125 feet on Glen Cove Road and 100 feet on Jericho Turnpike, there is a gasoline station, the only portion of a Business A district 150 feet in depth and fronting 418 feet on Jericho Turnpike, that is presently occupied. The balance of the area south of Jericho Turnpike for more than a mile to the east is residential, minimum 7,500 foot plot, except for two nonconforming uses, a nursery and a restaurant, which are close to the intersection of Hillside Avenue and Jericho Turnpike.
With the consent of both parties, the court has viewed the property and its environs. In approximately the center of the Hillside Avenue frontage of the subject parcel is a one-acre drainage area owned by the town. Topographically the parcel presents no problem for residential development. The taking maps and testimony show that there will be controlled access to Jericho Turnpike and Hillside Avenue at the eastern end of subject parcel and from the eastern boundary (after taking) for approximately 250 feet west along both Hillside and Jericho. Hillside Avenue is to be elevated to cross Jericho Turnpike but the evidence does not establish where that crossing will be located or where elevation will begin. Traffic counts for Glen Cove Road at the Jericho Turnpike intersection show 28,166 vehicles on March 22, I960; for Jericho Turnpike east of Roslyn Road in April and May, 1959, an average of 23,000 vehicles, for Hillside Avenue, east of Roslyn Road, during the same period, an average of 11,600.
Plaintiff applied to the Village Board of Trustees in 1957 for rezoning of the subject parcel to Business “ G ”. No action has ever been taken on that application. In October, 1959 she filed a further application with the board under article VII of the Zoning Ordinance for change to Business “A”. Pursuant to the ordinance that application was referred to the Planning Board, which declined to make the certification necessary for action by the Board of Trustees. It is concede^ *515 that plaintiff has made no other application with respect to the property. At the close of plaintiff’s case defendant moved to dismiss on the ground that plaintiff had failed to show that she had exhausted her administrative remedies and at the close of the entire case defendant moved to conform the pleadings to the proof by the assertion of an affirmative defense to the same effect. Decision on both motions was reserved; the first is now denied; the second is granted but the affirmative defense is dismissed on the merits.
It is now well established that a complaint seeking a declaratory judgment that an ordinance is unconstitutional because confiscatory is sufficient though it does not allege that application for a variance or special exception has been made and denied. (Gardner v. Le Boeuf, 8 A D 2d 736; Levitt v. Incorporated Vil. of Sands Point, 6 A D 2d 701, affd. 6 N Y 2d 269; Hammond v. Town of Caldwell, 282 App. Div. 798.) Whether that rule of pleading necessarily implies that the availability of other relief to plaintiff is always a matter of affirmative defense, or whether as a matter of constitutional law plaintiff must as part of her prima facie case “ show that the ordinance did not authorize a variance of the general restrictions which would permit the use of her property for a purpose to which it is reasonably adapted” (Town of Cortlandt v. McNally, 282 App. Div. 1072, 1073, motion for leave to appeal denied 283 App. Div. 800) it is not necessary now to decide. Plaintiff’s evidence showed that the parcel in question was 19 acres before taking and over 14 acres after taking by the State. While plaintiff’s case is largely predicated on the unique situation of the parcel because surrounded by three major highways, it is clear that notwithstanding the uniqueness of the property, application need not be made for a variance if such application would be futile (O’Brien Transfer & Stor. Co. v. Incorporated Vil. of Great Neck, 2 A D 2d 690). Since a Board of Appeals “ has no power to remake the zoning map under the guise of granting a variance ” (Levitt v. Incorporated Vil. of Sands Point (6 N Y 2d 269, 273, supra), the size of the instant parcel would appear to make a variance application futile. Nor is any special exception available to plaintiff; that under section 401 (subd. [11]) of the ordinance because plaintiff does not own 50 acres, that under section 401 (subd. [5]) of the ordinance because the court’s view establishes that there is no public utility in the neighborhood and the evidence of the witness Baker establishes, by inference, that no utility is interested in the location and that under section 1002 (subd. [15]) of the ordinance because that section requires that the “ person, firm or corporation for *516 whom the use is intended shall be the owner of the fee * * * at the time application is made.”
However, plaintiff’s evidence does not establish arbitrariness, confiscation or that the zoning of the subject parcel is not part of a comprehensive plan. While it is true that except for the Business “ C ” parcel at the northwest corner of Jericho Turnpike and Glen Cove Boad the entire village is zoned residential, such zoning is constitutional. (Matter of Fox Meadow Estates v. Culley, 233 App. Div. 250, affd. 261 N. Y. 506; Gignoux v. Village of Kings Point, 199 Misc. 485; Valley View Vil. v. Proffett, 221 F. 2d 412; see Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190,195; cf. Dowsey v. Village of Kensington, 257 N. Y. 221, 229.) Further, Levitt v. Incorporated Vil. of Sands Point (6 N Y 2d 269, 272, supra) and Samuels v. Town of Harrison (195 N. Y. S. 2d 882) establish that a one-acre minimum lot area requirement is, in an appropriate case, a legitimate exercise of the police power.
There is insufficient relation between public health, safety, morals and welfare and residential zoning when the zoning power is used to include or continue property in such a district “ primarily for the purpose of providing a beautiful and dignified village frontage on the public thoroughfare”. (Dowsey v. Village of Kensington, supra, p. 230; Matter of Isenbarth v. Bartnett, 206 App. Div. 546.) In both cases, however, it was shown that development of the rest of the street on which the village fronted was contrary to the zoning imposed on the parcel in question; in Dowsey, for apartments and business as opposed to single-family residences; in Isenbarth, for business, as opposed to residences none of which had been built on the street for more than 20 years. (See, also, Evanns v. Gunn, 177 Misc. 85, affd. 262 App. Div. 865.) In the instant case, though it is shown that Jericho Turnpike west of Northern State Parkway is all business or industrial and that there is a large industrial area about three quarters of a mile south of Jericho Turnpike on Glen Cove Boad, the business uses in the immediate vicinity of the subject parcel number only five (two gas stations, a Carvel stand, a nursery and a restaurant, the latter two being nonconforming uses) and establish no such general pattern as was present in either Dowsey or Isenbarth. It must, therefore, be held that the zoning of plaintiff’s property is neither arbitrary in its relation to the police power nor invalid because inconsistent with a comprehensive plan.
With respect to the confiscation issue, Arverne Bay Constr. Co. v. Thatcher (278 N. Y. 222, 226) states the rule (on the authority of the Dowsey case) to be that “ an aggrieved prop *517 erty owner must show that if the ordinance is enforced the consequent restrictions upon his property preclude its use for any purpose to which it is reasonably adapted ’ ’. Plaintiff must, therefore, show that the property is not adapted to any use either absolutely or conditionally permitted. While the court may perhaps take notice of the disappearance of farms from the Old Westbury locality, and the conditionally permitted uses have been disposed of above, there Avas no showing of any offer of the property for public school use. If that omission be overlooked, plaintiff still cannot prevail for a number of reasons.
First, if the differences in the testimony of the respective experts be weighed, plaintiff has not shown unconstitutionality beyond a reasonable doubt. (Wiggins v. Town of Somers, 4NY 2d 215.) While plaintiff’s expert testified to efforts over a five-year period to sell the parcel under its present zoning, he also testified that he was employed to consider possible changes in-zone and to develop a purchaser for the property if the zoning were changed. The advertisements placed and brochures used in such efforts were not produced. While testifying that he “found no possibility of any investor or builder willing to build on this property with a restriction of a one-acre zone ’ ’, the expert also testified that during the first three years of the period six houses were built in the vicinity on one-acre plots, thus indicating some market. Further, his testimony was weakened by the definition of ‘ ‘ adaptable for residential purposes ” which he gave and which Avhile valid from a planning point of Anew appears to go beyond the constitutional meaning of that term. Without in the least intending to impugn plaintiff’s expert, whose excellent reputation is well knoAvn to the court, the court has not been furnished the basis for giving any greater weight to his testimony than to that of defendants’ witnesses. Even if it be conceded, therefore, that defendants’ zoning expert’s opinion was Aveakened by his failure to support it by marketability data and that defendants’ appraiser’s valuations were based on sales not entirely comparable, plaintiff’s burden has not been sustained. Nor does the fact that defendants ’ builder said he * ‘ would give ’ ’ $8,000 to $10,000 per acre for plaintiff’s property as raw land rather than “ I offer ” such sum, or the fact that defendants’ mortgage officers are not solely empowered to make the mortgage commitments Avhich they testified would be available for one-acre residences on this property so reduce the weight of their testimony that it must be said that plaintiff has sustained her burden. ‘ ‘ Witnesses called by the parties have differed on the question Avhether the property is reasonably adapted for residential purposes. In our opinion, *518 respondent [plaintiff] has established at best that the validity of the zoning regulations insofar as they affect his [her] property is fairly debatable. In such a case, the legislative judgment must be allowed to control”. (Gerzof v. Town of Huntington, 8 A D 2d 841, affd. 8 N Y 2d 788.)
Secondly, plaintiff’s expert placed a value of $3,000 per acre on the property under its present zoning. For the 19 acres this would equal $57,000. It was not shown what plaintiff paid for the property in 1941, nor the extent to which real estate values for similarly zoned property in the general area have risen since that time. There is no showing that plaintiff will suffer any “ dollars and cents ” loss, therefor. (Cf. Dilliard v. Vil. of North Hills, 276 App. Div. 969; Plymouth Builders, v. Vil. of Lindenhurst, 284 App. Div. 895; Gregory v, Incorporated Vil. of Garden City, 18 Misc 2d 478; Tamaccio v. Town of Hempstead, N. Y. L. J., May 19,1960, p. 16, col. 5.)
Thirdly, the elements on which plaintiff most heavily relies to show that the parcel is no longer adaptable to one-acre single family zoning are the traffic on the three major highways which enclose the property, the impending elevation of Hillside Avenue, the dust and noise thus created and the admission by defendants’ witnesses that screening of some sort would be required for residential privacy. But “ restrictions should not be lowered on residential property merely because it abuts on a heavily traveled street” or on account of increased traffic, Freeman v. City of Yonkers (205 Misc. 947); Gregory v. Incorporated Vil. of Garden City (supra); see Brown v. Village of Owego (260 App. Div. 328, affd. 284 N. Y. 655); and although the necessity for screening was referred to as one of the reasons for invalidating the ordinance in Ulmer Park Realty Co. v. City of New York (57 N. Y. S. 2d 713, 715) as was also noise and dust, the Appellate Division on appeal reversed, holding that “ the suitability of plaintiff’s property for residential use presents a debatable question ” (270 App. Div. 1044) and that reversal was affirmed by the Court of Appeals (297 N. Y. 788). Such factors may warrant a change in zoning; they do not mandate such a change unless they preclude use of the property under applicable zoning restrictions. (See Shepard v. Village of Skaneateles, 300 N. Y. 115, 119.)
Fourthly, plaintiff argues that each zoning case is sui generis and that the Dowsey case in which the zoning ordinance was invalidated most closely approaches the instant case. Having compared the facts of the instant case with Dowsey and with Gerzof v. Town of Huntington (supra) and Ulmer Park Realty Co. v. City of New York (supra) in both of which the ordinance *519 was sustained, the court concludes that the instant case more closely resembles the latter two cases than it does Doiosey.
Finally, a few words should be said concerning plaintiff’s offer of proof with respect to offers received, conditional upon change of zone and of the contract, conditional upon zoning change, entered into by plaintiff for the sale of subject parcel for $700,000. While the Dowsey case considered that the value of the property involved as residential was one quarter of its value if devoted to other uses, and a sufficient reduction in value may constitute confiscation Matter of Hayes v. City of Yonkers (1 A D 2d 1031); see Matter of Eaton v. Sweeney (257 N. Y. 176,183); Matter of Isenbarth v. Bartnett (supra); Brandmeier v. Incorporated Vil. of Rockville Centre (N. Y. L. J., Feb, 3,1950, p. 444, col. 2); and while the highest value fixed for plaintiff’s parcel as residential was $135,850 for the entire 19 acres, or roughly 20% of the value of the property if devoted to business use, the court excluded the proof as irrelevant on the issue of confiscation because, unlike the plaintiff in the Dowsey case whose property had apparently been previously unzoned, the present plaintiff’s property was zoned residential when she acquired it. She has never had a right to the commercial value of the property. Reduction in value in her case must, therefore, be measured against her cost increased by the enhancement in real estate values for residential property in the general area.