Bernard S. Meyer, J.
Fundamental to the declaration of the invalidity of a zoning ordinance as it applies to a particular parcel of property are the principles that complainants must establish such invalidity not merely by a preponderance of evidence but beyond a reasonable doubt, and that the court’s function is limited to the declaration of what the zoning classification may not be and does not extend to fixation of the proper zoning classification. The present action concerns an irregularly shaped parcel of approximately two and one-quarter acres located at the northeast corner of South Oyster Bay Road and the Long Island Expressway service road. The parcel is zoned Residence “ D ”, which requires a minimum plot of 7,000 square feet. Complainants contend that that classification is invalid because (1) it bears no relation to the public health, safety or general welfare; (2) it does not conform to a comprehensive plan and to the zoning purposes fixed by section 263 of the Town Law; and (3) it is confiscatory. Complainants demand judgment (a) declaring the ordinance invalid insofar as it restricts the parcel to Residence “ D ”; (b) declaring the ordinance invalid insofar as it prevents the development of the parcel for business purposes; and (c) declaring that the failure of the town to grant complainants’ application for rezoning from Residence “ D ” to Business “ F ” was unconstitutional. Since there is evidence that the property would be suitable for an apartment, a permissible Residence “ E ” use, and the evidence does not show that the general welfare mandates its use for business, the last two declarations requested could not, in any event, be made. Nor on the whole case, have complainants sustained their burden of proving the Residence “ D ” zoning of the parcel invalid. The complaint is, therefore, dismissed, without costs.
With the consent of both parties the court has viewed the subject property, the shopping areas to the north and south of it and the properties between the subject property and those shopping areas. The parcel in question, together with the property of the Syosset Fire District, form, roughly, a trapezoid, the Fire District owning a plot 100 by 175 feet in the northwest corner of the trapezoid, the entire trapezoid bounding for 250 feet on the north and 362 feet on the east by property presently used for residences, for 360 feet on the south on the Expressway service road and for 345 feet on the west on South Oyster Bay Road. At the present time the Expressway ends at South Oyster Bay Road, but eventually the exit for westbound traffic from the Expressway to the service road will enter the service road a short distance from the southeast corner of the subject parcel. *846 South Oyster Bay Road is a heavily travelled four-lane highway. On the northwest corner of South Oyster Bay Road and the Expressway, a Business “ F ” parcel is occupied by an automobile sales agency. Between the Expressway and Jericho Turnpike on the north there is a drainage sump, and there are 11 homes on the east and west sides of South Oyster Bay Road used for professional offices (doctors, dentists, chiropractor). Along Jericho Turnpike to a depth of approximately 200 feet there is a shopping area running east and west from South Oyster Bay Road. From the subject parcel to Jericho Turnpike is a distance of approximately 4,000 feet. To the south of the Expressway, between the Expressway and Northern State Parkway, there is on the east side of South Oyster Bay Road a medical center which is presently for sale, and on the west side of the road a farm stand, a real estate office and two doctors offices, all within the area zoned ResidenceD ”. South of the Northern State Parkway and also a distance of approximately 4,000 feet from the subject parcel is a large shopping center, in an area zoned Business “ F ”.
Complainants’ case is based on the contentions that the public welfare requires available neighborhood shopping facilities within a half-mile of a residential area, that a comprehensive zoning plan requires neighborhood shopping facilities on the parcel in question, and that the traffic on South Oyster Bay Road and the Expressway service road, the location of and noises emanating from the firehouse, the location of and light and noises emanating from the car sales agency opposité the subject parcel and the fact that there is too little shopping area in relation to the residences now in existence make it impossible to sell houses built on the property at a price that would include any return for the land. The court rejects the town’s argument that, because complainants sold to the fire district the property on which the firehouse is located, any hardship resulting from its location must be considered self-imposed. It is not disputed that the fire district has the power of eminent domain. Complainants may not be penalized because they negotiated the taking price rather than require that a condemnation proceeding be instituted. It rejects also complainants’ attempt to bolster their case by pointing to the facts that on subdivision maps covering the 40 acres developed by them and their predecessors, the entire trapezoid was shown as ‘ ‘ Future Proposed Business, ’ ’ and that contracts entered into with purchasers contained similar notice. While those facts could have bearing in litigation between complainants and the purchasers, they are totally irrelevant to the present determination. Zoning is a legislative *847 function vested in the municipal governing body, in this case, the Town Board. Neither the filing of a map by a property owner nor its approval in any form not encompassing specific consideration of the classification by the Town Board can change the zoning or create an estoppel that will work such change.
Oases such as Dowsey v. Village of Kensington (257 N. Y. 221); Matter of Isenbarth v. Bartnett (206 App. Div. 546, affd. 237 N. Y. 617), and Evanns v. Gunn (177 Misc. 85, affd. 262 App. Div. 865), which have upset residential zoning classifications because of insufficient relationship to public health, safety, morals and general welfare have involved situations in which the development of the surrounding area was contrary to the zoning imposed on the parcel in question and in which it appeared the zoning classification was fixed “ in order that the beauty of the village as a whole may be enhanced.” In each a general pattern contrary to residential zoning was clearly established ; in Dowsey for apartments and business; in Isenbarth for business, no residences having been built for more than 20 years; in Evanns by rezoning a single parcel residential, leaving it entirely surrounded by business. In the instant case much of the development on which complainants rely is for professional use, a use permitted by Residence “ D ” zoning. Only the automobile sales agency and the real estate office are contrary to that zoning. It cannot be said, therefore, that the zoning of complainants’ property is arbitrary in its relation to the police power (see Gardner v. Le Boeuf, 24 Misc 2d 511, 516).
Complainants strenuously argue, however, that the distance of other shopping facilities from the subject parcel and from the many homes in the vicinity of subject parcel mandate, as part of comprehensive planning, the use of the property for neighborhood shopping. They rely on the last sentence of section 263 of the Town Law, which provides: “ Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality ”, on the testimony of their experts that neighborhood shopping is ‘ ‘ the most appropriate use of ” this land, and on the fact that the town’s zoning expert has testified in another proceeding that “ Generally the standard of one-half mile [distance within which a neighborhood shopping facility should be from the entire residential area] is used in suburban areas where there is a lesser density of population.” The statutory provision that the regulations ‘ ‘ be made with * * * a view to * * * encouraging the most appropriate *848 use of land throughout such municipality ’ ’ is not a legislative command that every parcel of land within the municipality must be zoned for its most appropriate use. The legislative judgment entrusted to the governing body of the municipality is not so narrowly limited. The mandate of the provision is general, not specific, and is complied with if the regulations as they affect land throughout the municipality encourage the most appropriate use. By resolution of July 7, 1959, the Town Board refused to rezone the subject property for neighborhood business (Business 11 F ”). While that resolution is not in evidence, it is quoted in complainants ’ brief and may be judically noticed (Civ. Prac. Act, § 344-a, subd. A, par. 3). One of the reasons given was that the Town Board had “ established a definite pattern of relationship as between residential areas and neighborhood shopping centers whereby new shopping centers would be permitted only where the nearest shopping facilities were located more than a mile away from any given community.” Before that legislative determination may be upset it must be shown not only that the general standard is one-half mile but also that use of a one-mile standard is arbitrary and unreasonable. While complainants’ experts testified that in view of its population density the area in the.vicinity of subject property is not sufficiently served by neighborhood shops and that the property “ is peculiarly situated for improvement as a neighborhood shopping center ”, the town’s expert testified that there was more than enough business zoning already in the area. Such a record, does not demonstrate the “ urgent business need ” required to invalidate the ordinance (Matter of Hayes v. City of Yonkers, 1 A D 2d 1031; Huntley Estates v. Town of Eastchester, 283 App. Div. 1090). The most that can be said of this phase of complainants’ case is that the standard used by the board and its determination not to zone the subject property Business “ F ” are fairly debatable. In such a case the court may not substitute its judgment for that of the legislative body.
Nor does the proof establish that the ordinance precludes the use of the property for any purpose for which it is reasonably adapted. Such a demonstration is made only when it is shown that the property is not adapted to any use either absolutely or conditionally permitted (Matter of Forrest v. Evershed, 7 N Y 2d 256, 262; Attoram Realty Corp. v. Town of Greenburgh, 8 A D 2d 937, motion to dismiss appeal denied 7 N Y 2d 919; Gardner v. Le Boeuf, supra, p. 517). While each of complainants’ experts testified that in his opinion the present Residence “D” zoning does not permit any reasonable use of the property, that conclusion was not substantiated by showing that effort had *849 been made to interest those connected with such permitted uses as a church or a public library or museum, or such a conditionally permitted use as a nursery school. Neither was there “ dollars and cents ” proof with respect to use of the property for two-family dwellings, a conditionally permitted use, notwithstanding that such a dwelling in the area in question might be expected to produce a greater profit than would a one-family dwelling. If those deficiencies in the proof be overlooked, it nonetheless may not be said that complainants have shown confiscation. The burden of their argument is that the combination of the firehouse and its siren, the automobile agency and its display lights, the projected service road and its commercial and passenger traffic, the present extent of the traffic on South Oyster Bay Road and the distance to shopping facilities from the property, make it impossible to sell the homes that could be built on the property for more than $15,000 to $16,000 or approximately the construction cost, so that no return could be obtained for the land. The proof showed, however, that approximately five months prior to trial, a house 75 feet to the rear of the firehouse sold for $21,500 and that about a year prior to trial, another house sold for $20,800. Complainants showed that they had held the house on the corner of Loretta Drive and the Expressway service road for sale for more than 12 months at $24,750 without success. That difficulty apparently stems largely from the proximity of the marginal road whereas homes on the subject parcel would face on a cul-de-sac. At most the testimony concerning the house on Lot 16 proved that there was no market for $25,000 houses but it did not substantiate that the market is only $15,000 to $16,000 on subject property, or disprove the market of approximately $21,000 evidenced by the sales referred to. In the face of a difference of $5,000 to $6,000 between construction cost and the market, complainants could show confiscation only by demonstrating that the value of'the land plus the cost of selling the houses would exceed that amount times eight, the smallest number of houses which it appears can be laid out on the property under applicable regulations; that is, would exceed $48,000. Complainants introduced no proof concerning their cost for the subject property or the carrying charges applicable to it (see Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 44; Gardner v. Le Boeuf, supra, pp. 518-519). Rather they contented themselves with testimony that the present value of the property with all improvements in would be “75 cents a square foot, if it wasn’t for these detrimental influences ’ ’, and the value of the land thus approximately $7,300 per house. (Though one of the complainants testified *850 to a higher market value per house for the land, the court in view of his obvious interest and the conflict between his testimony and that of his appraisal expert does not accept the higher figure.) It may well be argued that where, as here, parts of the subject parcel have been taken in condemnation and under the threat of condemnation, the amounts received by the owner take into account the resulting detriment to the remainder of its property, and some portion of the amount thus obtained by the owner must be taken into account in determining whether zoning-restrictions applicable to the remainder are confiscatory. Be that as it may, the value of the property may ndt be fixed for purposes of the present inquiry without reference to the detrimental influences when some of those influences are the result of conditions existing when complainants acquired title (the zoning of the automobile agency property) or of the development of the area (South Oyster Bay Road traffic). There cannot be confiscated from complainants’ value which their property never had (see Gardner v. Le Boeuf, supra, p. 519). The evidence does not sustain complainants on the issue of value. At most it shows that they paid approximately $500,000 for 40-odd acres, or about $12,500 an acre. At that acreage price, the subject parcel of 2% acres would have cost $28,125. Even if there is added to that sum $9,300 to cover the cost of improving the raw acreage for the building of eight houses and brokers commissions of $1,050 (5% of $21,000) on eight sales, the total is only $45,825. On the record presented, it cannot be said that complainants have demonstrated beyond a reasonable doubt that the present zoning is confiscatory.
It follows that the complaint must be dismissed, but dismissal will be without costs. The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act and all motions on which decision was reserved are decided accordingly. Of the findings and conclusion submitted by complainants, only those findings numbered 1, 2, 4, 5, 6, 7,11,12,13,14,15, 17, 20, 21, 22 and 26 are made by the court.
Settle on notice.