William B. Beehs-ait, J.
This action, tried before me without a jury, seeks a judgment declaring the July 12,1960 amendment to the Building Zone Ordinance and Map of the City of Glen Cove unconstitutional and void insofar as it purports to upzone the properties of the respective plaintiffs from an “ 1-1 Light Manufacturing District” to an “ B-2 One-half Acre Single Family Besidence District.” The ordinance is attacked as confiscatory in that none of the properties is adaptable to any of the uses permitted in the B-2 district; as arbitrary, in that it bears no substantial relationship to the purposes of zoning; and as ultra vires, in that the purpose it purports to achieve is not one which the local legislative body is authorized to pursue under its enabling statute.
The plaintiffs collectively (except Cove and Universal, who are tenants) own all but one acre of a 19%-acre tract of land known as Pratt Oval in the City of Glen Cove. This tract was utilized originally as a service area for a number of large estates owned by various members of the Pratt family, and consisted of an oval-shaped dirt road enclosing some four acres of undeveloped land and surrounded on three sides, in a symmetrical pattern, by five buildings of similar heavy mill construction, each of which faced inward upon the oval. This 19%-acre plot, together with the much larger surrounding estates it serviced, was unzoned until 1926, at which time it was zoned as residential. In 1942, when Charles Pratt sold the tract, together with some adjacent estate land, the entire 19% acres was zoned industrial, and the industrial zoning continued from 1942 until the 1960 residential zoning amendment here contested was enacted.
Plaintiffs Chess, Balsan and Nylacore, having utilized their respective improved parcels for industrial purposes continuously, are conceded to have valid nonconforming uses. Some question has been raised as to the continued industrial use by plaintiff Baymore of its improved parcel, but,, since its industrial use continued from 1950 until well after the 1960 amendment was enacted, the court finds that it, too, has a valid nonconforming use. Plaintiffs Borech and Cateo, owning unimproved par- *557 eels in the center of the oval, have no nonconforming use. The other plaintiffs, Cove and Universal, are tenants of Baymore and Ralsan respectively, and what is held with respect to Baymore and Ralsan will be considered as inclusive of the rights of their tenants. (Cf. Ralston Purina Co. v. Zoning Bd. of Town of Westerly, 64 R. I. 197; Richman v. Zoning Bd. of Adjustment, 391 Pa. 254.) One Fatseas, who is not a plaintiff, owns approximately one acre of unimproved property in the center of the oval.
The issue of confiscation will be considered first as it may apply to the unimproved parcels of Rorech and Cateo, and thereafter as it may apply to the improved parcels of Chess, Ralsan, Nylacore and Baymore.
Rorech owns a parcel of approximately two acres in the northernmost section of the interior oval, surrounded on three sides by the road and on the fourth (south) side by the unimproved parcel of Fatseas. Across the road to the east is the Ralsan plastics factory; to the north, the Chess cosmetics factory; and to the west, the Baymore property which was previously used as a ribbon factory and silk screening plant and is now rented to Mary Chess, Incorporated, as a storage space.
The court finds that this parcel is quite obviously not adaptable to single-family dwelling use, to municipal building use, to school, college or university use or church use. The factories which enclose the plot, it must be remembered, will continue as nonconforming uses regardless of the outcome of this litigation. It would offend common sense to hold that an oasis of suburban living, governmental operation, academic learning or spiritual reflection could flourish amidst the desert of industrial activity which would surround it. Notwithstanding the tepid testimony of defendants’ expert to the contrary, the court is convinced that homeowners, city fathers, parents, teachers, pupils, clergy and laity all would agree to reside, govern, teach, study and pray elsewhere.
The law is clear, however, that before an ordinance may be held confiscatory, plaintiff must prove that the land to which it is applicable is not reasonably adaptable for any of the uses enumerated in the ordinance. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226; Gardner v. Le Boeuf, 24 Misc 2d 511, 517, affd. 15 A D 2d 815.) The R-2 district created by the present ordinance permits not only the uses enumerated above, but also “ scientific or research laboratories” and “florists, greenhouses, farms, country estates, [and] nurseries.” Of these uses farms and country estates are easily disposed of. The parcel, by virtue of size and location, is simply not adaptable for such uses. And if by “ florists ” is meant a place where flowers *558 and shrubs are sold, rather than grown, then the Rorech plot is again not adaptable. It is hidden away from public? view and utterly remote from any conceivable maz'ket.
‘ ‘ Adaptability ’ ’ is, of course, a relative term and up to this point the court has been considering only functional adaptability. In other words, without considering dollars and cents proof, it is held that the Rorech parcel is not functionally adaptable to any of the foregoing enumerated uses. But “adaptability” means more than that. It envisages economic as well as functional use, and assumes not the most profitable use (Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269), but that some permitted use can be profitable (Arverne Bay, supra; Town of Hempstead v. Lynne, 32 Misc 2d 312, 317). With respect to the final uses permitted in the R-2 zone, the court holds that the Rorech parcel could possibly be used for a greenhouse or a nursery, or even for a scientific or research laboratory, but that it could not economically or profitably be so used. The comparatively small size of the plot would immediately eliminate most research laboratories and all but the most modest greenhouses or nurseries. The surrounding nonconforming factory uses would discourage most would-be users from locating there. The seclusion of the parcel would utterly deprive any nurseryman or greenhouse operator of the usual advertising value of such establishments. In short, the consequent elimination of the normal market has so depressed the value of the land as to eliminate profitability altogether. Under its present residential zoning, surrounded by industrial use, the Rorech parcel is not worth a fraction of its assessed valuation, let alone its appraised value when the conversion factor is applied. And any reasonable relationship to its value as industrial land, for which purposes it was zoned when Rorech purchased it (see Gardner v. Le Boeuf, 24 Misc 2d 511, supra), has been completely destroyed. Consequently, as to this parcel, the ordinance is confiscatory. (See Dowsey v. Village of Kensington, 257 N. Y. 221; Matter of Eaton v. Sweeny, 257 N. Y. 176; Matter of Hayes v. City of Yonkers, 1 A D 2d 1031.)
The Cateo parcel consists of approximately one acre of unimproved land in the southernmost section of the interior oval, and what has been said with respect to the Rorech parcel applies with even greater force to this smaller parcel. It is not reasonably adaptable for any of the uses permitted in the R-2 zone and the amended ordinance is accordingly, and for the same reasons as set forth above, held confiscatory and unconstitutional as applied to this parcel.
*559 With respect to the improved parcels of Chess, Ralsan, Nylacore and Baymore, the case of Scarsdale Supply Co. v. Village of Scarsdale (8 N Y 2d 325) must be considered. It was there held that the existence of a nonconforming use would not preclude the owner-user from attacking the upzoning ordinance which created the nonconforming status. In remanding the case to Special Term for factual determination, the court left open but one question, i.e., whether or not there was a present invasion of plaintiff’s property rights. If there were, then the amendment would be stricken notwithstanding the existence of the nonconforming use. And in determining a present invasion the court imposed upon the plaintiff the burden of proving that his property was so situated as to have no possibility for residential or zoned uses and to be most readily adapted to a use now precluded under the ordinance. Plaintiff in the Scarsdale case met that burden. (See Scarsdale Supply Co. v. Village of Scarsdale, 212 N.Y.S. 2d 878.)
In order to meet the same burden, counsel for the plaintiffs in the case at bar have introduced voluminous testimony as to the value of the factories as they would presently exist if the industrial zoning continued, compared to the value of the vacant land if all the buildings were demolished, the sites leveled, and the vacant land sold for residential use. Such comparative testimony is dramatic to be sure, but does not constitute proof of confiscation. It is based upon an unrealistic assumption that buildings worth upwards of one million dollars will be razed, demolition costs paid, and vacant land sold, when the ordinance does not require such demolition, but, on the contrary, creates nonconforming uses which may continue indefinitely. A present invasion as- envisaged by the Scarsdale case cannot rest upon a future speculative loss which might theoretically, but will never practically, be self-imposed.
Plaintiff in the Scarsdale case was the proprietor of a building-supply yard situated on a 3.4-acre tract. While the use in that case had continued for some period of time, it did not involve in any substantial sense a permanent development of the land. The land was not irrevocably committed to the use. Consequently, proof as to the value of the land for any of the nses permitted under the former zoning compared with its value under the more restrictive zoning was as properly allowed in that case as it would be in a case of vacant land. In other words, plaintiff in the Scarsdale case had not developed his property in such a manner as to indelibly characterize its use. Other potential, higher uses were still available to him, which were presumably substantially more valuable than his own use as *560 well as substantially more valuable than any of the more restrictive uses permitted by the amendment. The same pattern existed in the case of Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493).
Here, however, the character of use of each of the improved parcels has been permanently established and the only test which can reasonably be applied to determine the issue of confiscation is a comparison between the value of the industrial, property as developed and as permitted in the 1-1 zone prior to the amendment, with its value as developed as a nonconforming use and its value as developed for any of the more restrictive uses permitted in the R-2 zone.
In this regard it can be said of each of the improved parcels that none is functionally or economically adaptable for residential, municipal, school, church, florist, greenhouse, farm or country estate use. The value of each of the industrial buildings is infinitely higher than the value would be for any such use. Not the same can be held with respect to “ scientific or research laboratory ’ ’ use. Plaintiffs have simply failed to sustain their burden of proving that these buildings cannot be reasonably and economically converted to such use. Their expert testimony consisted of bare conclusions, unsupported by facts, and defendants’ expert testimony was flatly contradictory. Neither the physical layout of the buildings nor the type of construction suggests to the court that they could not be used for scientific or research laboratories.
Moreover, the proof is insufficient to show that the value of the industrial buildings as nonconforming uses is so disproportionate to their value as permitted uses in the 1-1 zone as to amount to an economic taking of the property. The proof in this area was to the effect that the uses could not be expanded; that they could not, without notice, be reinstated once, abandoned; that they could not be continued in case of a 51% demolition of structure by fire or other cause; and that part of the undeveloped land which could formerly have been used for expansion was still taxed as industrial land notwithstanding its limited use. This proof is clearly insufficient to show anything but a hardship. Unconstitutionality must be proven beyond a reasonable doubt. (Wiggins v. Toivn of Somers, 4 N Y 2d 215.) Plaintiffs Chess, Nylacore, Ralsan and Baymore have not met this burden and have therefore not demonstrated that the amendment is confiscatory as applied to their parcels. (Cf. Levitt v. Incorporated Vil. of Sands Point, 6 N Y 2d 269; Matter of Harbison v. City of Buffalo, 4 N Y 2d 553; Shepard v. Village of Skaneateles, 300 N. Y. 115.)
*561 The court is not unaware of the fact that the application of the foregoing principles to the respective parcels leads to an anomalous, if not absurd, result. The heavily developed and improved factories are held properly zoned as residential, whereas the vacant land in the middle of the oval is allowed to be developed as industrial. Such a result casts a definite shadow upon the wisdom of the amendment itself, and might be suggestive of a still further legislative attempt to solve what is concededly a unique land-use problem. Pratt Oval is an anachronism born of feudal parentage, nurtured by an industrial past and inundated by the subdivided, residential present. Its future as an integrated part of the city does not appear to be enhanced by the present ordinance. The court, however, cannot substitute its judgment for that of the local legislative body, and the least that can be said of the R-2 zoning amendment which that body enacted is that its relationship to the public health, safety and welfare and the purposes of zoning as set forth in the enabling act (General City Law, § 20) presents a question which is fairly debatable. In such a case the ordinance will not be declared unconstitutional (Euclid v. Ambler Co., 272 U. S. 365, 388) and to debate the question in this opinion would serve no useful purpose.
Judgment may therefore be entered declaring the amendment to the zoning ordinance unconstitutional as applied to the properties owned by plaintiffs Rorech and Cateo and in all other respects dismissing the complaint.