Mario Rittoni, J.
This is another of a long line of cases involving the innumerable battles between municipalities in Nassau County trying to keep properties within their confines residential in nature and commercial interests attempting to change those areas into more profitable business zones.
Plaintiff owner again sues for a judgment declaring the building zone ordinance of the Village of Old Westbury unconstitutional as it applies to plaintiff’s property. Her first action was tried in 1960. (Gardner v. Le Boeuf, 24 Misc 2d 511.) She again claims that the ordinance unconstitutionally restricts her property to one-family, one-acre plots under the village’s Residence “B” zone, when it should be zoned “Business.” Plaintiff’s property has been zoned Residence “ B ” since 1926.
Plaintiff’s property consists of 14% acres of wooded land on the northeast corner of Jericho' Turnpike and Glen Cove Road. It is surrounded by Glen Cove Road, a county road, on the west; Hillside Avenue, a State road, on the north; a recharge basin property on the east; and Jericho Turnpike, a State .road, on the south.
Although Glen Cove Road is a wide four-lane road, it is undivided. However, both Hillside Avenue and Jericho Turnpike are not only very wide but the east and west traffic lanes are divided by wide islands or malls. Hillside Avenue has the *132 added feature of being higher than the subject property at one end and lower than the property at the other end.
The other three corners of Glen Cove Road and Jericho Turnpike, that is, the northwest, southwest and southeast corners, are commercially zoned and commercially used. There are two gasoline stations, the Red Coach Grille and a Carvel ice cream stand in these areas.
Above Hillside Avenue, the rest of the village, except for a few small areas for the village’s convenience, is zoned residential, some for one-acre plots, some for two-acre plots and the rest for larger plots.
The history of the litigation involving this property is pertinent. In 1957, plaintiff first petitioned the village for permission to use her property for a shopping center. The petition was turned down. Her subsequent court action for a judgment declaring the residential zoning ‘ ‘ B ” of her property as unconstitutional was rebuffed by the courts (Gardner v. Le Boeuf, 24 Misc 2d 511, affd. 15 A D 2d 815). Thereafter, another application to the village for a rezoning to commercial or business use in order to build a Bloomingdale’s department store was also rejected. After that, she started the present proceeding by applying to the village for a rezoning. Although the village’s Planning Board recommended approval of her application, the village’s Board of Trustees, after receiving a recommendation of disapproval by the County of Nassau Planning Commission and after coiisidering other factors, denied her application. Plaintiff’s present action followed that denial.
Meanwhile, her property, which had approximately 19 'acres, was partially condemned by the State and county for road widening, and she received $105,800 for approximately 4% acres of the subject property.
Plaintiff rests her case primarily on Stevens v. Town of Huntington (20 N Y 2d 352, 355, 356) and Matter of Fulling v. Palumbo (21 N Y 2d 30).
The pertinent language in the Stevens case (pp. 355-356) is as follows:
“ The appellants are entitled to succeed only if they have shown that the zoning ordinance, as applied to their property, is clearly arbitrary and unreasonable (Summers v. City of Glen Cove, 17 N Y 2d 307). If the classification is fairly debatable, it must be allowed to stand (Shepard v. Village of Skaneateles, 300 N. Y. 115). If, on the other hand, the ordinance goes so far as to preclude the use of the property for any purpose to which it is reasonably adapted, it is confiscatory and unconstitutional (Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493).
*133 “No doubt, every restriction on the unincumbered use of property may impose a burden, provoke hardship, or adversely affect value (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 302). That is one of the prices of society. But the question in each case is ultimately one of reasonableness and that, in turn, depends on a total view of the relevant facts and circumstances. ’ ’
The Stevens case did not adopt any new rule; it merely said that the disparity of value between the property when zoned residentially and when zoned for business was a factor among others which the court weighed in its ultimate determination in respect to constitutionality. Thus, the test of the validity of a zoning ordinance is still one of reasonableness and whether under the restrictions of the ordinance the property is reasonably adapted to any of the permitted uses.
Be that as it may, in the Stevens case the owner had a legitimate complaint. His property was being upzoned from commercial to residential when it was located in an ocean of surrounding commercial uses. In fact, the property was also adjacent to the large Walt Whitman Shopping Center, one of the largest in Long Island. This was a major factor in the Stevens decision (p. 356).
The situation here is not similar to the Stevens case. Plaintiff’s property has been zoned residential since 1926. The commercial uses in the present case are on the three corners and along a short stretch of the south side of Jericho Turnpike. Most of the area surrounding the subject property is residential. There is no overpowering commercial activity surrounding the subject property as there was in the Stevens case.
Plaintiff also presses Matter of Fulling v. Palumbo (21 N Y 2d 30). This was an unusual case involving area variance and the court was called upon to review in an article 78 proceeding a decision which denied a variance to permit a building on a plot smaller than the ordinance required. The facts there cried for relief. The owners in the Fulling case merely requested the right to build on a substandard plot, the same right as the owners of many other adjoining and adjacent substandard plots. The denial of the owner’s application in that case was on the face unfair and unreasonable, and the granting of a variance in that case would not in any way have affected the community or any comprehensive plan. Furthermore, there was no reasonable or legitimate interest in maintaining the character of the area. Then, too, at a prior time the Fulling plot conformed, but subsequent upzoning by the municipality made it nonconforming. To repeat, the Fulling case was concerned only with a minimum plot size restriction imposed' upon a plot already surrounded by *134 many other substandard plots. It is unfortunate that the language of the Fulling case is sometimes misinterpreted to apply generally to other zoning cases.
However, even using Fulling case language as a standard, plaintiff has failed to establish significant economic injury. True, if rezoned commercially the value of subject property would be $1,500,000 instead of from $200,000 to $225,000 for the .raw property. But if that were the sole reason the owner of every plot in a residential zone that could be used or sold for commercial purposes would have the right to have it rezoned to commercial use if it were shown that this gave the property owner a much greater economic gain. The ultimate effect would be that Nassau County would completely lose its residential character and would have commercial buildings and plants in every conceivable area. Plaintiff must also show that she has been deprived of reasonable use of her property. She has not done so, as will be demonstrated.
On the other hand, the village has demonstrated a legitimate purpose in retaining its “ B ” residential zoning. We are not dealing with a mere area requirement, nor with a plot surrounded by many other nonconforming plots as in the Fulling case, nor with a plot in an ocean of business activity and surrounded by business zoning as in the Stevens case. The village has had a reasonable longstanding comprehensive plan with a basic policy to establish and maintain its character as a village of residences. The preservation of that comprehensive plan is a legitimate purpose.
Plaintiff has failed to show that she is deprived of reasonable uses of her property. To state it another way, she has not shown that her premises are unsuitable for the purposes in which it is zoned. I am convinced after hearing witnesses on both sides —some of whom impressed me with their knowledge, integrity and candor, and some of whom did not — that the property as presently zoned is worth between $200,000 and $225,000 as raw property and that 11 salable residential plots can be developed on the property.
More specifically, the testimonies of two plaintiff’s experts were worthless. To believe them one must stretch the imagination. At first, one said that as presently zoned the subject property was worth nothing. He even offered a beautiful chart to demonstrate the worthlessness of the property. Later he reluctantly said the property could be worth up to $1,000 per acre. The other expert said the property had a nominal value of no more than $1,000 per acre. There is one answer to such testimony: Ridiculous!
*135 Some witnesses for the defendants, not all, were impressive. One well-qualified expert showed how the diminishing number of residential plots in Nassau County, coupled with the increasing demand for one family homes, made the subject property, especially in a prestigious area such as this, highly desirable for residential purposes. The plot, he said, as presently zoned was worth $225,000 in the raw.
The traffic situation emphasized so greatly by plaintiff as affecting the residential quality of the subject property is minimal. In fact, heavy traffic does not necessarily warrant the conclusion that the adjoining property cannot reasonably be used for residential purposes. It is a factor, among others, in determining whether the land is adaptable to residential use (Stevens v. Town of Huntington, 20 N Y 2d 352, 356, supra; Gardner v. Le Boeuf, 14 Misc 2d 98; Gregory v. Incorporated Vil. of Garden City, 18 Misc 2d 478, 483; Gardner v. Le Boeuf, 24 Misc 2d 511, affd. 15 A D 2d 815, supra; New York Trap Rock Corp. v. Town of Clarkstown, 1 A D 2d 890, affd. 3 N Y 2d 844).
Traffic counts offered at the trial before me established that toward the west side of the subject property the daily traffic on Glen Cove Road is 17,300 cars per day; toward the south of the subject property the daily traffic on Jericho Turnpike is 15,500 cars per day; and toward the north of the subject property the daily traffic on Hillside Avenue is 7,700 cars per day.
On the other hand, at the prior trial in 1960: ‘ ‘ Traffic counts for Glen Cove Road at the Jericho Turnpike intersection show 28,166 vehicles on March 22, 1960; for Jericho Turnpike east of Roslyn Road in April and May, 1960, an average of 23,000 vehicles, for Hillside Avenue, east of Roslyn Road, during the same period, an average of 11,600 ” (Gardner v. Le Boeuf, 24 Misc 2d 511, 514).
Therefore, traffic has not increased on the three roads partially surrounding the subject property. In fact, a reading of the figures at both trials establishes that traffic has diminished.
Also, as was shown on some site plans, no more than two residential plots would adjoin two of the three highways around the subject property.
The added argument is that the traffic in the area causes a lot of noise. If traffic noise were a great factor in the salability of homes, many homes on the Nassau South Shore would remain unsold. Kennedy Airport, one of the largest airports in the world, accommodates thousands of planes per day, most of which are continental and overseas jets. The noises from these planes affect homes for miles around.
*136 Again, as to noise by traffic, no acoustical experts were produced to compare the noise and noise effects in and about the subject property as compared to other noises and noise effects in and upon other similar communities.
Another point stressed by some of plaintiff’s experts was the widening of two adjoining roads, Hillside Avenue and Jericho Turnpike. Unfortunately for their positions, the widening of these two roads with wide dividing islands or malls built between the eastbound and westbound traffic had the effect of putting at least half of the traffic on each road farther away from the property than previously and thus lessening the traffic noise effect upon the property.
Then, too, the widening of Hillside Avenue had no perceptible effect of separating the subject property from the rest of the village. How important that is was never fully explained. Anyway, the village has no community center like other villages; it is just a community of residences. Hillside Avenue was there before; it is still there.
Another important factor has been completely overlooked. There is no evidence in this trial as to the price paid for the property, nor as to the carrying charges and taxes.
The argument that the value of plaintiff’s property rose less than other properties in the village and that this is a factor in determining the economic effect is specious. First, the figures given in this respect by one of the experts are unpersuasive because I found his other testimony unacceptable, especially when he audaciously testified that the property as presently zoned had no Value. On the other hand, two experts testified that the property as presently zoned was worth between $16,000 and $20,000 per acre in the raw, and if engineeringly improved would be worth between $21,000 and $26,000 per acre. This compares favorably with the testimony of a plaintiff’s expert that other one-acre plots in the village were worth $23,000 per acre. Be that as it may, no one has cited nor have I found any law that says that a difference in the increase of market value between properties in the same locality is, by itself, a basis for unconstitutionality.
Thus, beside other contentions discussed above, plaintiff has stressed the argument that since the original Gardner decisions (Gardner v. Le Boeuf, 24 Misc 2d 511, affd. 15 A D 2d 815, supra) there have been two substantial changes in the conditions of the property:
‘1 A. The surrounding roads have been widened, realigned and some of them elevated.
*137 “ B. The value of other one acre zoned parcels suitable for residential purposes in the Village of Old Westbury have zoomed upward whereas the value of the subject premises has not.”
Since it is clear from the prior discussion that the first alleged change has not been proven disadvantageous to the plaintiff and that the second contention has not been proved, the present facts are legally similar to those presented in the prior 1960 case involving the subject property. Indeed, I find no material change in the facts and no change in the applicable law.
One more observation: With the consent of both parties and accompanied by their attorneys, I viewed the subject property and the surrounding area. Topographically, I see no reason to prevent the residential development of the property, and acoustically, I was not unfavorably impressed by the traffic sounds coming from the three roads that partially surround the property.
Other contentions advanced by plaintiff have been considered and found wanting, and other arguments advanced by defendants have been considered and found unnecessary for further discussion.
The complaint is dismissed and judgment is granted to defendants.